# UNITED STATES DISTRICT COURT
## SOUTHERN DISTICT OF OHIO
### WESTERN DIVISION

DAVID GIPSON,
    Plaintiff,

    vs.

HAMILTON COUNTY COMMON
PLEAS COURT, *et al.*,
    Defendants.

Case No. 1:22-cv-764

McFarland, J.

Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

    Pro se plaintiff David Gipson brings this civil action against numerous Hamilton County judges and officials alleging state and federal claims related to a January 15, 2021 incident at the Hamilton County Courthouse. (Doc. 1). This matter is before the Court on defendants Ruehlman, Heekin, Luebbers, and Nestor's (the "Judicial Defendants'") motion to dismiss (Doc. 11), plaintiff's response in opposition (Doc. 22), which includes a request for injunctive relief[1], and the Judicial Defendants' reply memorandum (Doc. 27). Plaintiff also filed a motion for leave to file a surreply (Doc. 28), to which the Judicial Defendants did not respond.[2]

## I. Background[3]

    As best the Court can discern, plaintiff's complaint alleges the following facts. On January 15, 2021, at approximately 10:35 a.m., plaintiff and a person identified as Mr. Sullivan entered the Hamilton County Courthouse ("Courthouse"). (Doc. 1, PAGEID 8 at ¶ 13). After passing through security, plaintiff and Mr. Sullivan entered a hallway of the Courthouse, in

---

[1] This document appears on the docket twice to capture the two ECF filing events. (*See* Docs. 22 and 23).

[2] Plaintiff filed another document on the same day captioned: "Memorandum in Response to Motion for Dismissal and Motion for Injunction Relief." (Docs. 24 and 25 (also docketed twice to capture two ECF filing events)). Despite its caption, however, this document appears to respond to the answer (Doc. 17) filed by defendants Bogan, Dryer, Hayslip, Hnryak, McGuffey, Ober, and Speers and is therefore not addressed in this Order and Report and Recommendation.

[3] Plaintiff's complaint contains various references to "sham" state court proceedings. (*See generally* Doc. 1). While the Court "must accept as true all the allegations contained in the complaint and construe the complaint liberally in favor of the plaintiff[,]" it "need not . . . accept as true legal conclusions or unwarranted factual inferences." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (citations omitted).

which four to five other people were using electronic devices. (*Id.*). A Hamilton County Sheriff's Deputy (defendant Speers) approached and "told Mr. Gipson she wanted to search his phone without a search warrant." (*Id.* at ¶ 14). Plaintiff said he had a meeting with Sheriff Jim Neil, and defendant Speers said she would need to follow plaintiff and/or Mr. Sullivan. (*Id.*). Plaintiff "was told to sit" in the hallway, and two other Sheriff's Deputies (defendants Brogan and Dryer) put plaintiff and Mr. Gipson "in detention"; plaintiff did not resist. (*Id.*).

Plaintiff next appears to allege that defendant Dryer referenced but did not produce a rule of the Hamilton County Court of Common Pleas that prohibited recording with electronic devices in the Courthouse ("Rule 33(C)(5)(d)").[4] (*Id.*, PAGEID 8-9 at ¶¶ 15-17). The other individuals in the hallway using electronic devices, who were Caucasian, were not approached by Sheriff's Deputies. (*Id.* at ¶ 16). Plaintiff alleges Mr. Sullivan was taken before defendant Ruehlman, who found Mr. Sullivan in contempt of court based on an "sham noise" allegedly "created by Defendant Dryer, Hayslip and Speers acting in concert. . . ." (*Id.* at ¶18). Plaintiff was thereafter charged with a contempt offense, while Mr. Sullivan was charged with a second contempt offense. (*Id.* at ¶ 19). Plaintiff alleges that defendant Ruehlman did not see or hear the conduct constituting contempt. (*Id.*).

Plaintiff alleges violations of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights (Counts I, II, III, and V); conspiracies to violate his constitutional rights (Counts III and VI); and various state law claims (Counts VII-X, XII-XV[5]) based on this incident. The Judicial Defendants move to dismiss all claims against them. (Doc. 11).

---

[4] Effective March 1, 2023, this Rule was renumbered to Rule 33(E)(4). *See* Common Pleas Local Rules, HAMILTON COUNTY COURT, *available at* https://hamiltoncountycourts.org/index.php/local-rules/ (last visited June 8, 2023).

[5] Plaintiff's complaint fails to allege an eleventh cause of action. (*See* Doc. 1 at PAGEID 20-21). Count X is a state law claim for negligent and intentional infliction of emotional distress, and the next cause of action is Count XII, which is a state law claim for prohibited disclosures of protected health information, Invasion of privacy. (*Id.*).

## II. Standard of Review

The Judicial Defendants challenge both the Court's subject matter jurisdiction over the complaint and the sufficiency of the allegations therein.  *See* Fed. R. Civ. P. 12(b)(1), (6).  Plaintiff bears the burden of establishing subject matter jurisdiction.  *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party.  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).  Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required.  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  Nevertheless, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.  The complaint must "give the defendant fair notice of what the . . .

3

claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted). A complaint filed by a pro se plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" to withstand a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

### III. Motion for Leave to File Surreply

Before turning to the arguments, the Court addresses plaintiff's motion for leave to file a surreply. (Doc. 28). The motion is not well-taken. Local Rule 7.2(a)(2) states that "[n]o additional memoranda beyond [the motion, memorandum in opposition, and reply memorandum] are permitted except upon leave of court for good cause shown." *Id.* The Local Rule does not define "good cause" for filing any additional memoranda. *Id.*; *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, No. 2:07-cv-1190, 2010 WL 4117552, at *4 (S.D. Ohio Oct. 19, 2010). Generally, good cause exists where the reply brief raises new grounds that were not included in the movant's initial motion. *Id.* A different result is warranted when the opposing party knew or should have known at the time it filed its responsive memorandum that a matter had been placed in issue, but the party did not make its arguments and submit its proof at that time. *Id.* Allowing a party to submit a surreply under these circumstances would give the party "the proverbial 'second bite at the apple.'" *Id.*

While plaintiff argues that his proposed surreply is in response to "new arguments and factual claims made by [the Judicial Defendants]" (Doc. 28 at PAGEID 1246), this is belied by review of the Judicial Defendants' reply memorandum, which clearly retraces the arguments

4

made in their opening brief. (*Compare* Doc. 11 *with* Doc. 27). Plaintiff's motion for leave to file a surreply (Doc. 28) is therefore denied.

**IV. Analysis**

The Judicial Defendants offer several bases for dismissal of all of the claims in plaintiff's complaint against them. The Court addresses them in turn.

A. Hamilton County Court of Common Pleas

To the extent that plaintiff's complaint names the Hamilton County Common Pleas Court as a defendant, that entity is not *sui juris*. *See* Fed. R. Civ. P. 17(b)(3) (Ohio law determines a court's capacity to be sued); *Burton v. Hamilton Cnty. Juv. Ct.*, No. 1:04-cv-368, 2006 WL 91600, at *5 (S.D. Ohio Jan. 11, 2006) (citing *Malone v. Ct. of Common Pleas of Cuyahoga Cnty.*, 344 N.E.2d 126 (Ohio 1976) and holding that Ohio courts are not *sui juris*). Plaintiff offers no cogent rebuttal to this argument, and his complaint should be dismissed as to the Hamilton County Court of Common Pleas.

B. The *Rooker-Feldman* doctrine

The Judicial Defendants argue that the *Rooker-Feldman* doctrine is a jurisdictional bar to plaintiff's claims against them. Plaintiff argues in response that the "Rooker Feldman does not apply to a Section 2921.52 Using a sham legal process court without jurisdiction without proper procedure or venue. All appeals were exhausted and Judge Robert Ruehlman held exculpatory evidence for over a year. See exhibit (1281)." (Doc. 24 at PAGEID 722).

The *Rooker-Feldman* doctrine implicates the subject matter jurisdiction of this Court to consider plaintiff's claims. *See Durham v. Haslam*, 528 F. App'x 559, 565 (6th Cir. 2013) ("[T]he *Rooker-Feldman* doctrine concerns the subject-matter jurisdiction of the district court . . . and 'federal courts have a duty to consider their subject matter jurisdiction in regard to every

case. . . .'") (citing *In re Squire*, 617 F.3d 461, 465 (6th Cir. 2010) and quoting *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009)).

The *Rooker-Feldman* doctrine "precludes 'lower federal courts . . . from exercising appellate jurisdiction over final state-court judgments.'" *Skyway Inv. Corp. v. Tushman*, 541 F. App'x 536, 538 (6th Cir. 2013) (quoting *Lance v. Dennis,* 546 U.S. 459, 463 (2006)). The doctrine is "confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Subject matter jurisdiction is lacking under the *Rooker-Feldman* doctrine if: (1) the plaintiff is "the losing party in state court," *id.* (quoting *Skinner v. Switzer*, 562 U.S. 521, 531 (2011)); (2) the plaintiff is asking the district court to "'review and reject [ ]' those judgments, which were 'rendered before the district court proceedings commenced[,]'" *id.* (quoting *Exxon Mobil Corp.*, 544 U.S. at 284); and (3) the plaintiff's "injuries were 'caused[ ]' by the state-court judgment at issue[,]" *id.* (quoting *Exxon Mobil Corp.*, 544 U.S. at 284). "The pertinent inquiry . . . is whether the 'source of the injury' upon which [the] plaintiff bases his federal claim is the state court judgment, not simply whether the injury complained of is 'inextricably intertwined' with the state-court judgment." *Id.* (alteration in original) (quoting *Kovacic v. Cuyahoga Cnty. Dep't of Child. and Fam. Servs.*, 606 F.3d 301, 309 (6th Cir. 2010)).

Plaintiff's complaint is not "the functional equivalent of an appeal from a state court judgment." *Untied v. CIT Grp. Consumer Fin., Inc.*, 23 F. App'x 233, 235 (6th Cir. 2001). As best the Court can decipher, only three of plaintiff's 16 claims are premised on a challenge to the merits of his contempt convictions. In Count III, plaintiff asserts a false arrest/unlawful

detention/false imprisonment claim based on allegations that his contempt convictions were not supported by a certification that defendant Ruehlman "saw or heard the conduct constituting contempt." (Doc. 1, PAGEID 9 at ¶ 19; *see also* PAGEID 14-15 at ¶¶ 39-40). In Count V, plaintiff asserts a Fourth Amendment malicious prosecution claim based on his allegation that "Defendants . . . kn[ew] there was no factual or legal basis for the [contempt] charges. . . ." (*Id.*, PAGEID 16 at ¶ 46). In Count VIII, plaintiff asserts a state law malicious prosecution claim based on his allegation that defendants charged plaintiff with criminal offenses in the absence of "probable / reasonable cause" and Defendant Ruehlman "acted maliciously by use or coercion, and intimidation. . . ." (*Id.*, PAGEID 19 at ¶¶ 55-57). Because *Rooker-Feldman* "applies only to an exceedingly narrow set of cases[,]" the Court concludes that the *Rooker-Feldman* doctrine should bar only Counts III, V, and VIII against the Judicial Defendants. *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 400 (6th Cir. 2020) (citing *Exxon Mobil Corp.*, 544 U.S. at 284). *See also Ewing v. O'Brien*, 115 F. App'x 780, 782 (6th Cir. 2004) (finding plaintiff's § 1983 claims barred under the *Rooker-Feldman* doctrine where it was "readily apparent that [the plaintiff]'s federal claims succeed only to the extent that the state courts wrongly found [the plaintiff] in contempt.").

C. Abstention

The Judicial Defendants next argue that the Court should abstain from deciding plaintiff's claims under the *Pullman* abstention doctrine.[6] The Judicial Defendants argue that plaintiff's federal case is a "quasi-appeal" of his state court contempt convictions that should be attacked through a direct appeal. (Doc. 11 at PAGEID 127; Doc. 27 at PAGEID 1236). Plaintiff argues in response that the Judicial Defendants' position assumes that the state court proceedings

---

[6] This doctrine is derived from *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).

originated with a lawful court, when in fact the Judicial Defendants operated "like a common street gang. . . ." (Doc. 22 at PAGEID 195; *see also* PAGEID 204).

*Pullman* abstention amounts to postponement (not abdication) of jurisdiction and arises "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Jones v. Coleman*, 848 F.3d 744, 749-50 (6th Cir. 2017) (quoting *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)). The March 2022 Ohio First District Court of Appeals decision attached to the Judicial Defendants' motion to dismiss states that plaintiff did not appeal his contempt convictions (*see* Doc. 11 at PAGEID 149), and the Judicial Defendants do not otherwise identify any state law issue that remains pending in state court that would trigger the "extraordinary and narrow exception" to this Court's duty to adjudicate the federal questions before it. *Jones*, 848 F.3d at 749 (quoting *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959)). The *Pullman* abstention doctrine therefore does not offer a basis for dismissal of the claims against the Judicial Defendants.

D. Judicial immunity

The Judicial Defendants next argue that they are shielded from plaintiff's claims by the doctrine of judicial immunity. Plaintiff argues in response that there is no judicial immunity under 42 U.S.C. § 12202 but does not otherwise cogently respond to the Judicial Defendants' arguments. (*See* Doc. 22 at PAGEID 194-95, 197, 201-03). In reply, the Judicial Defendants argue that 42 U.S.C. § 12202 states that "[a] *State* shall not be immune" from suit for violations of the ADA but does not address immunity of state officials in their individual capacities. (Doc. 27 at PAGEID 1238) (emphasis added). The Judicial defendants further argue that "because Judge Ruehlman's decisions in the underlying case were within the jurisdiction of the common pleas court, a court of competent jurisdiction (*see* R.C. § 2931.03), and the acts upon which the

8

Complaint is based were judicial in nature, the Judicial Defendants are entitled to absolute judicial immunity from civil liability." (*Id*.).

Judges are largely immune from liability for acts they commit while functioning within their judicial capacity. *See Norfleet v. Renner*, 924 F.3d 317, 319 (6th Cir. 2019) (citing *Mireles v. Waco*, 502 U.S. 9, 9, 11-12 (1991) (per curiam)) (remaining citations omitted). A plaintiff will overcome a claim of judicial immunity only where: 1) the judge's actions were clearly non-judicial in nature and therefore outside the scope of the judge's judicial capacity; or 2) the judge's actions were taken in the absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12 (citations omitted). The factors relevant to whether an act is judicial in nature are: 1) "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge," and 2) "whether [the parties] dealt with the judge in his judicial capacity." *Id.* at 12 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). The analysis of whether a judge's action is non-judicial is a functional one; "immunity is justified and defined by the *functions* it protects and serves, not by the persons to whom it attaches." *Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989) (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988)). Judges retain immunity if they exceed their jurisdiction, such as convicting a defendant of a nonexistent crime, if they act in error, or if they act maliciously; judges lose immunity if they act without jurisdiction, such as a probate judge trying a criminal case. *Stump*, 435 U.S. at 357 n.7 (citing *Bradley v. Fisher*, 80 U.S. 335, 352 (1871)).

While it is less likely for an action to be judicial if it is not an adjudication between parties, *see Morrison*, 877 F.2d at 466 ("Any time an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one."), the contempt power is an inherently judicial power. *See* Ohio Rev. Code § 2705.01 ("A court, or judge at chambers,

may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."); Ohio Rev. Code § 2705.02 ("A person guilty of any of the following acts may be punished as for a contempt: (A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer. . . ."); *King v. Love*, 766 F.2d 962, 966 (6th Cir. 1985) ("[J]ailing persons for contempt of court is a function normally performed by judges. . . .").

In light of the foregoing authority, the Court considers the conduct plaintiff alleges with respect to each individual Judicial Defendant.  Plaintiff alleges that defendant Heekin confirmed that there is a "Judges" group that is "not recognized by the State of Ohio or the Hamilton clerk of court" but does not otherwise allege that defendant Heekin took any specific actions related to the January 2021 incident at issue.  (*See* Doc. 1, PAGEID 16 at ¶ 46; *see also* PAGEID 21 at ¶ 66).  Plaintiff's complaint alludes to defendant Luebbers being the "Presiding Judge" that would have had the power to authenticate Hamilton County Court of Common Pleas rule changes but does not allege that defendant Luebbers took any particular actions related to the January 2021 incident at issue.  (*Id.*, PAGEID 9 at ¶ 17).  Plaintiff's complaint does not allege any specific actions by defendant Nestor related to the January 2021 incident at issue.

Thus, as best the Court can decipher and reasonably infer, plaintiff asserts only Count I against defendants Heekin, Nestor, and Luebbers—alleging that they bear liability under the First Amendment for their enactment of Rule 33(C)(5)(d), which restricted recording with electronic devices in the Courthouse.  Because this was administrative as opposed to judicial action, judicial immunity does not attach.  *Hicks v. Crowley*, No. 2:22-cv-2204, 2023 WL 348229, at *6 (S.D. Ohio Jan. 20, 2023) (judicial or quasi-judicial immunity did not attach where the defendants "were not acting as hearing officers presiding over adjudicatory hearings").  As such,

Count I of plaintiff's complaint should not be dismissed as to the Judicial Defendants pursuant to the doctrine of judicial immunity.

As to defendant Ruehlman, in addition to his participation in the enactment of Rule 33(C)(5)(d), plaintiff also alleges that he presided over contempt proceedings in an unlawful manner. These allegations describe actions that were judicial in nature and—at most—exceeded defendant Ruehlman's jurisdiction. Counts III-X, XII, and XIV-XV of plaintiff's complaint should therefore be dismissed as to defendant Ruehlman based on his judicial immunity.[7] This conclusion is unchanged by 42 U.S.C. § 12202, referenced by plaintiff, which is inapposite to the Judicial Defendants in their *individual* capacities because it says only that "[a] *State* shall not be immune . . . for a violation of this chapter." 42 U.S.C. § 12202 (emphasis added).[8]

E. <u>Injunctive relief</u>

The Judicial Defendants also argue that 42 U.S.C. § 1983 explicitly shields them from injunctive relief. *Id.* ("[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."). Plaintiff offers no argument that any of the Judicial Defendants violated a declaratory decree or that declaratory relief was unavailable. As such, the Court finds that § 1983 shields the Judicial Defendants from injunctive relief related to plaintiff's constitutional claims based on actions taken in their judicial capacity (i.e., excepting claims based on their administrative functions).

---

[7] Plaintiff's Fourth Amendment unreasonable search and seizure claim (Count II) refers to the search that took place "one minute 30 seconds after [plaintiff] . . . completed a search security check" and thus does not appear to be asserted against defendant Ruehlman. (Doc. 1, PAGEID 13 at ¶ 35). Plaintiff's state law assault and battery claim (Count XIII) also does not appear to be asserted against defendant Ruehlman. (*See id.*, PAGEID 23 at ¶¶ 85-86 (describing the relevant conduct as "arresting, frisking and handcuffing. . . .")).

[8] Section 12202 abrogates States' Eleventh Amendment immunity for suits for money damages under the ADA. *Id.*

F.  Declaratory relief

The Judicial Defendants also argue that plaintiff has not demonstrated a case or controversy warranting declaratory relief under Article III of the Constitution.  The Judicial Defendants argue that their only involvement in plaintiff's claims was in their adjudicative capacities, "presiding over the proceedings (Judge Ruehlman), acting as Administrative Judge (Judge Luebbers), or in some other unidentified judicial capacity (Judges Heekin and Nestor)." (Doc. 11 at PAGEID 133).  They argue "no case or controversy exists 'between a judge who adjudicates claims under a statute and the litigant who attacks the constitutionality of the statute.'"  (*Id.*, quoting *In re Justs. of Supreme Ct. of Puerto Rico*, 695 F.2d 17 (1st Cir. 1982)).

The Judicial Defendants are correct that there is no adverse legal interest between judges and the party suing them where the judges' only function concerning a challenge to a statute is "to act as neutral adjudicators rather than as administrators, enforcers, or advocates."  *In re Justices*, 695 F.2d at 21.  In such a case, the judicial officers and the plaintiff are not adversaries such that an actual case or controversy exists.  *Id.*

In this case, however, plaintiff's First Amendment claim challenges the enactment of Rule 33(C)(5)(d) by the Judicial Defendants, which plaintiff alleges prohibits him from recording public officials in the courthouse in violation of his First Amendment rights.  (*See* Doc. 1, PAGEID 12 at ¶ 30).  Arguably, the Judicial Defendants' role in enacting and ultimately enforcing this court rule falls outside of their neutral adjudicative functions in contrast to the Justices of the Supreme Court of Puerto Rico, who "played no role in the statute's enactment" or "initiated its enforcement."  *In re Justices*, 695 F.2d at 21.  Indeed, in reaching its decision, the First Circuit distinguished the case of *Supreme Court of Va. v. Consumers Union of Am., Inc.*, 446 U.S. 719 (1980), where the United States Supreme Court held the litigants before it could

12

sue judges to enjoin them from enforcing bar membership requirements.  The First Circuit reasoned that "unlike the case before us, the requirements under attack [in *Consumers Union*] were promulgated by the judges themselves in the form of court rules; the judges had acted in a legislative capacity, which made their involvement in the litigation more direct and which gave them an institutional stake in the litigation's outcome."  *In re Justices*, 695 F.2d at 23.

*In re Justices* is distinguishable from the instant case, and the undersigned declines to find no case or controversy between plaintiff and the Judicial Defendants such that declaratory relief is unavailable.

G.  Qualified immunity

The Judicial Defendants argue that they are entitled to qualified immunity because "[t]here is no authority to suggest [their] conduct violated clearly established law or that they would have known that their alleged conduct in the underlying case was unlawful."  (Doc. 11 at PAGEID 134).   Plaintiff again argues that 42 U.S.C. § 12202 precludes immunity.

"Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known."  *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (2006)).  Thus, when a defendant raises qualified immunity, the plaintiff must show that (1) "a constitutional violation has occurred" and (2) "the violation involved a clearly established constitutional right of which a reasonable person would have known."  *Id.* (citing *Sample v. Bailey*, 409 F.3d 689, 695-96 (6th Cir. 2005)).  The Court may consider these elements in any order.  *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "[T]o impose individual liability upon a [state official] for engaging in unconstitutional misconduct, it is a plaintiff's burden to specifically link the

[official]'s involvement to the constitutional infirmity. . . ." *Burley v. Gagacki*, 834 F.3d 606, 615 (6th Cir. 2016).  *See also Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983.").

Qualified immunity, a fact-sensitive analysis, is generally inappropriate at the motion-to-dismiss stage.  *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 761 (6th Cir. 2020).  But this is not an absolute rule.  *Id.*  "If, taking all the facts as true and reading all inferences in the plaintiff's favor, the plaintiff has not plausibly showed a violation of his clearly established rights, then the officer-defendant is entitled to immunity from suit" at the motion-to-dismiss stage.  *Id.* at 762.

1. *First Amendment*

The only conceivable link between defendants Heekin, Luebbers, and Nestor and any constitutional claim is through an inference that they, along with defendant Ruehlman, were involved in the enactment Rule 33(C)(5)(d), which violated the First Amendment.  (*See* Doc. 1, PAGEID 12 at ¶ 30 (The Judicial Defendants "eliminat[ed]" plaintiff's "ability to record[] [p]ublic officials in the performance of their duties. . . .")).  Rule 33(C)(5)(d),[9] in effect at the time of the January 2021 incident at issue, limited the right to record in the Courthouse:

> Except when expressly permitted by a Hamilton County Judge under this Rule, or Local Rule 30,[10] electronic devices shall not be used within any area of the Courthouse, including designated areas, to:
>
> 1) Take or record a photograph, video, or other visual image, or;
> 2) Record, transmit, or receive audio or sound.

---

[9] Prior versions of these Rules are not available online.  The Court relies on the accuracy of this version as cited by defendants (Doc. 11 at PAGEID 135), which plaintiff has not challenged.

[10] This Rule governs media coverage of court proceedings.  Common Pleas Local Rules, HAMILTON COUNTY COURT, *available at* https://hamiltoncountycourts.org/index.php/local-rules/ (last visited June 13, 2023).

In a case considering a substantially similar predecessor to Rule 33(C)(5)(d),[11] the Sixth

Circuit held that: "In a limited public forum [including, as agreed by the parties in that case, the

hallway outside a courtroom], the government "is not required to and does not allow persons to

engage in every type of speech." *Enoch v. Hamilton Cnty. Sheriff's Off.*, 818 F. App'x 398, 405

(6th Cir. 2020) (quoting *Hartman v. Thompson*, 931 F.3d 471, 479 (6th Cir. 2019)). "The

government may restrict speech so long as the restrictions are viewpoint neutral and 'reasonable

in the light of the purpose to be served by the forum.'" *Id.* (quoting *Hartman*, 931 F.3d at 479)

(internal quotations omitted). In view of this authority, plaintiff's complaint offers no allegations

raising a plausible inference that the Judicial Defendants violated a clearly established First

Amendment Right. *See Seifert*, 951 F.3d at 762. Plaintiff does not allege that Rule 33(C)(5)(d)

preferred or discouraged a particular viewpoint. Sixth Circuit authority predating the January

2021 incident at issue establishes that a substantially similar restriction on speech was

---

[11] Hamilton County Court of Common Pleas Local Rule 33(D)(6), titled "Cell Phones, Cameras, Pagers, Laptop Computers, and Other Electronic Devices," reads:

> a. Unless otherwise permitted in accordance with Rule 30 of these Local Rules, the operation of any cellular or portable telephone, camera (still or video), pager, beeper, computer, radio, or other sound or image recording or transmission device is prohibited in any courtroom or hearing room, jury room, judge's chambers or ancillary area (to be determined in the sole discretion of the Court) without the express permission of the Court. All such devices must be turned off in the above-listed areas at all times.

> b. Duly licensed attorneys and their paralegals/assistants appearing in court, courthouse employees, public safety officers, authorized contractors and vendors, court staff, and any others authorized by the Court are exempt from the prohibition set forth above unless ordered by the Court.

> c. Any person or persons violating this Rule are subject to sanctions for contempt and or criminal prosecution, and may be ejected from any restricted area described above or from the courthouse, and any item or device operated in violation of this Rule may be confiscated by court staff or courthouse security personnel and held until the offending person(s) leave(s) the courthouse. In no event shall the Court or any court or security personnel be liable for damage to any device confiscated and/or held in accordance with this Rule.

*Enoch v. Hamilton Cnty. Sheriff's Off.*, No. 1:16-cv-661, 2019 WL 1755966, at *3 (S.D. Ohio Apr. 19, 2019), *aff'd in part, rev'd in part, dismissed in part on other grounds*, 818 F. App'x 398 (6th Cir. 2020).

permissible under the First Amendment.[12]  The Judicial Defendants should be granted qualified immunity as to plaintiff's First Amendment claim.

      2.  *Fourth Amendment*

Plaintiff's complaint references several Fourth Amendment claims.  (*See* Doc. 1, PAGEID 13 at ¶ 36  (Count II) ("searching and seizing" plaintiff and his electronic device without "a warrant, probable cause or any legal justification"); PAGEID 14 at ¶ 39 (Count III) ("warrantless arrest and continued detention . . . unsupported by probable cause"); and PAGEID 16 at ¶ 46 (Count V) (malicious prosecution)).  None of the Fourth Amendment claims mention or implicate defendants Heekin, Nestor, or Luebbers, and these defendants are thus entitled to qualified immunity on these claims because plaintiff has not pleaded any facts showing that they committed a constitutional violation.  *See Burley*, 834 F.3d at 615; *Gilmore*, 92 F. App'x at 190.

As it relates to defendant Ruehlman, Count II refers to the initial encounter between plaintiff and defendant Sheriff's Deputies and does not allege any involvement by defendant Ruehlman.  *See supra* note 7.  At most, plaintiff alleges defendant Ruehlman's issuance of the warrant was a continuation of the "sham process" as it was not supported by oath[] or affirmation. . . ."  (Doc. 1 at PAGEID 13).  Defendant Ruehlman is thus entitled to qualified immunity on Count II of plaintiff's complaint.  *See Burley*, 834 F.3d at 615; *Gilmore*, 92 F. App'x at 190.  Defendant Ruehlman is also entitled to qualified immunity as to the malicious prosecution claim (Count V).  Plaintiff has not alleged that his contempt convictions were

---

[12] In one sentence of his 28-page complaint, plaintiff alludes to racially discriminatory application of Rule 33(C)(5)(d).  (*See* Doc. 1, PAGEID 8 at ¶ 16 ("None of the estimated 4-5 Caucasian individuals . . . using their . . . cell phones or other electronic devices were stopped, detained, searched, and arrested by Defendants nor did any of them have their mobile devices searched or seized.")).  While the Court must construe a pro se plaintiff's complaint liberally, the Court declines to find this sufficient to raise an Equal Protection claim under the Fourteenth Amendment.  *See Enoch*, 818 F. App'x at 405 ("[The plaintiffs] did not assert a violation of the Equal Protection Clause.  Their race-based claims therefore are not properly alleged in this case.").

ultimately resolved in his favor.[13]  *See Sykes v. Anderson*, 625 F.3d 294, 309 (6th Cir. 2010) (To state a Fourth Amendment malicious prosecution claim, "the criminal proceeding must have been resolved in the plaintiff's favor.") (citation omitted).  As such, plaintiff fails to satisfy the first prong of the qualified-immunity analysis as related to Count V.

Count III, although captioned as a conspiracy claim, appears to allege a false imprisonment claim against defendant Ruehlman that arose following his false arrest by other defendants.  (*See* Doc. 1, PAGEID 14 at ¶ 39 ("[A] warrantless arrest and continued detention of a person unsupported by probable cause . . . violates rights protected by the Fourth . . . Amendment[]. . . .")).  "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff."  *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) (quoting *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)).  "When a false-imprisonment claim arises out of an alleged false arrest . . . those claims are identical. . . ."  *Id.*  Construing plaintiff's complaint liberally and making all inferences in his favor, he appears to sufficiently allege the violation of clearly established Fourth Amendment law by defendant Ruehlman.  (*See* Doc. 1, PAGEID 9 at ¶¶ 18-19 (allegations suggesting that defendant Ruehlman did not have probable cause to convict plaintiff with contempt)).  Even if defendant Ruehlman is not shielded by qualified immunity on this claim at this juncture, however, the claim remains subject to dismissal against him based on the doctrines of *Rooker-Feldman* and judicial immunity.

> 3.  *Fifth, Sixth, Eighth, and Fourteenth Amendments*

Plaintiff also references violations of the Fifth, Sixth, and Eighth Amendments in conclusory fashion.  (*See, e.g.*, Doc. 1, PAGEID 3 at ¶ 2; PAGEID 7 at ¶ 10; PAGEID 14 at ¶

---

[13] Plaintiff's "motion for the return of his property" was ultimately resolved in his favor.  (*See* Doc. 11 at PAGEID 149-51).

40; PAGEID 15 at ¶ 43; and PAGEID 18-19 at ¶ 52).  Absent factual allegations to support such constitutional claims, plaintiff cannot meet the first prong of the qualified-immunity analysis as to his Fifth, Sixth, and Eighth Amendment claims against the Judicial Defendants.  To the extent the Court could possibly construe a Fourteenth Amendment Due Process property deprivation claim related to the taking of plaintiff's cell phone (*see id.*, PAGEID 12 at ¶ 32; PAGEID 17-18 at ¶ 50), plaintiff fails to satisfy the first prong of qualified immunity analysis.  To state such a claim, a "plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Freeman v. Spoljaric*, No. 1:22-cv-203, 2023 WL 2743764, at *6 (S.D. Ohio Mar. 31, 2023) (quoting *Vicory v. Walton*, 721 F.2d 1062, 1065-66 (6th Cir. 1983)).  Because plaintiff has not so pleaded, dismissal is appropriate.  *Id.* (citing *Gibbs v. Hopkins*, 10 F.3d 373, 377-78 (6th Cir. 1993)).

    4. *42 U.S.C. § 12203*

    Plaintiff's complaint contains two isolated references to "disability."  (Doc. 1, PAGEID 4 at ¶ 3; PAGEID 7 at ¶ 12).  Count IV ("Title 42 U.S.C. § 12203 retaliation and coercion") does not reference disability at all.  (*Id.*, PAGEID 15 at ¶¶ 42-44).  In Count I (42 U.S.C. § 1983: Violation of Free Speech Rights — First Amendments and Title 42 U.S.C. §12203), plaintiff alleges that his rights under Title "42 U.S.C. §12203 ADA" were violated because "Hamilton County Sheriffs [] Dryer, Brogan, Ober, [and] Hnryak Speers, did threaten or interfere with an individual namely (Mr. Sullivan) while I encouraged Mr. Sullivan attempting to exercise the enjoyment of, his rights granted or protected."  (*Id.*, PAGEID 12 at ¶ 30).  As best the Court can discern, plaintiff appears to assert a claim under the ADA based upon the conduct of non-Judicial Defendants stopping a non-party, Mr. Sullivan, who allegedly had a disability, from recording in public.  To the extent that plaintiff's complaint references a cause of action under 42 U.S.C. §

12203, it is not asserted against any of the Judicial Defendants.  Notably, Count I of plaintiff's complaint pertaining to violations of the ADA references only defendants "Hamilton County Sheriffs [] Dryer, Brogan, Ober, [and] Hnryak Speers. . . ."  (Doc. 1, PAGEID 12, at ¶ 30). Accordingly, plaintiff's claims under the ADA should be dismissed against the Judicial Defendants for this reason.  In any event, plaintiff has failed to allege *he* was discriminated against on the basis of a disability.  To the extent plaintiff seeks to advance an ADA claim on behalf of Mr. Sullivan, as a non-lawyer plaintiff is prohibited from representing the interests of others in a federal lawsuit.  *See* 28 U.S.C. § 1654.  *See also Olagues v. Timken*, 908 F.3d 200, 203 (6th Cir. 2018) ("[W]e have consistently interpreted § 1654 as prohibiting pro se litigants from trying to assert the rights of others."); *Zanecki v. Health All. Plan of Detroit*, 576 F. App'x 594, 595 (6th Cir. 2014) ("[A] nonlawyer can't handle a case on behalf of anyone except himself.") (internal quotation marks and citations omitted).

H.  Statutory immunity

The Judicial Defendants argue that they also enjoy immunity from plaintiff's state law claims (Counts VII-X, XII, and XIV-XV)[14] under Ohio's Political Subdivision Tort Liability Act (PSTLA), Ohio Rev. Code § 2744 *et seq.*

Under Ohio Revised Code § 2744.03(A)(6), immunity applies to a political subdivision's[15] employees except in three circumstances:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

---

[14] As noted above, Count XIII does not appear to implicate any of the Judicial Defendants.  *See supra* note 7.

[15] A county such as Hamilton County is a political subdivision under the PSTLA.  Ohio Rev. Code § 2744.01(F).

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

*Id.* at §§ 2744.03(A)(6)(a)-(c).

The Judicial Defendants argue that plaintiff has not alleged that any of these subsections apply. Plaintiff appears to argue in response that the Judicial Defendants acted outside the scope of their authority—invoking subsection (a). (*See* Doc. 22 at PAGEID 202-04; *see also* Doc. 1, PAGEID 10-11 at ¶¶ 21, 23; PAGEID 16 at ¶ 46). Plaintiff's complaint further invokes the language of subsection (b). (*See* Doc. 1, PAGEID 21 at ¶ 66; PAGEID 22 at ¶ 71).

The Court finds that Ohio Revised Code § 2744.03(a)(7) is controlling, which states: "a judge of a court of this state is entitled to any defense or immunity available at common law or established by the Revised Code." As discussed above, judicial immunity shields a defendant from liability—even for malicious behavior—if the defendant's actions were not clearly non-judicial in nature and were not taken in the absence of all jurisdiction. *See Mireles*, 502 U.S. at 11-2; *Stump*, 435 U.S. at 357 n.7 (citing *Bradley*, 80 U.S. at 352). The state law claims in Counts VII-X, XII, and XIV-XV —though difficult to understand—appear to implicate only defendant Ruehlman. Even so, they all appear to describe defendant Ruehlman's handling of contempt proceedings—actions for which he enjoys judicial immunity. (*See* Doc. 1 at PAGEID 18-23, 24-26). Counts VII-X, XII, and XIV-XV of plaintiff's complaint should be dismissed as to defendant Ruehlman on the basis of the judicial immunity doctrine—expressly incorporated into the PSTLA. *See* Ohio Rev. Code § 2744.03(a)(7).

I. Rule 12(b)(6)

20

1. *Section 1983*

To prevail on a § 1983 claim, plaintiff must demonstrate "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). The Judicial Defendants argue that plaintiff's constitutional claims all concern defendant Ruehlman's "presiding over the contempt proceeding and making the decision he made in that case. . . ." (Doc. 11 at PAGEID 137). The Judicial Defendants argue that plaintiff's constitutional claims all essentially assert that defendant Ruehlman made an incorrect decision, which is not a cognizable § 1983 claim but instead should form the basis for an appeal. The Judicial Defendants also argue that, in any event, plaintiff has not alleged that they deprived him of a constitutional right in these Counts of his complaint.

For reasons discussed in Part IV.G.2-3, plaintiff's complaint fails to state claims related to unreasonable search and seizure under the Fourth Amendment; malicious prosecution under the Fourth Amendment; violations of the Fifth, Sixth, or Eighth Amendment; or a deprivation of property claim under the Fourteenth Amendment against any of the Judicial Defendants for which relief may be granted. To the extent that the Court could construe a plausible First Amendment claim against the Judicial Defendants based on their enactment of Rule 33(C)(5)(d), they are shielded by qualified immunity as explained in Part IV.G.1. To the extent the Court could construe a plausible Fourth Amendment false-imprisonment claim against defendant Ruehlman, either the *Rooker-Feldman* doctrine bars this Court's jurisdiction over the claim or defendant Ruehlman is absolutely immune from liability under the doctrine of judicial immunity as explained in Parts IV.B, D, and E.

21

2. *Section 1985*

The Judicial Defendants next argue that plaintiff has failed to allege a civil rights conspiracy claim under § 1985 in Count III or VI on which relief may be granted. Plaintiff responds that his claims meet the elements of a conspiracy. (*See* Doc. 22).

To state a claim for a civil rights conspiracy, plaintiff must allege that Judicial Defendants did:

> (1) conspire or go in disguise on the highway or on the premises of another (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. [Plaintiff] must then assert that one or more of the conspirators (3) did, or caused to be done, any act in furtherance of the object of (the) conspiracy, whereby another was (4a) injured in his person or property or (4b) deprived of having and exercising any right or privilege of a citizen of the United States.

*Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971) (quoting 42 U.S.C. § 1985(3)) (internal quotation marks omitted). "Conspiracy claims, even those brought via § 1985, must be pleaded with specificity." *Perry v. Se. Boll Weevil Eradication Found.*, 154 F. App'x 467, 477 (6th Cir. 2005) (citing *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984)) (remaining citation omitted).

Count III of plaintiff's complaint lacks any definitive statement that any of the defendants conspired together. At most, plaintiff alleges defendant Ruehlman, along with other defendants, "recorded themselves fabricating a sham order that did not exist. . . ." (Doc. 1, PAGEID 14 at ¶ 39). Similarly, Count VI references an "ex-parte meeting" involving defendant Ruehlman, but plaintiff does not otherwise allege any material facts or other specifics of the conspiracy. (*Id.*, PAGEID 17, at ¶ 50). To the extent that other parts of plaintiff's complaint reference a group called the "Judges" (*see, e.g.*, *id.*, PAGEID 6 at ¶ 8; PAGEID 16 at ¶ 46; PAGEID 19 at ¶ 57; PAGEID 26 at ¶ 99)), plaintiff has failed to allege specific facts in the complaint to support a

plausible conspiracy claim. Plaintiff's complaint therefore fails to state a claim under 42 U.S.C. § 1985(3) upon which relief can be granted.

J. Supplemental jurisdiction

The Judicial Defendants argue that because all of plaintiff's federal claims against them should be dismissed, the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims. The Court has discretion to exercise supplemental jurisdiction under 28 U.S.C. § 1367; but when a court dismisses all federal claims before trial, it should generally dismiss the state law claims. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 210 (6th Cir. 2004). Here, however, federal claims remain pending before other defendants, and:

> [s]ubsection (c)(3) [of 28 U.S.C. § 1367] requires that *all* claims over which it has original jurisdiction must have been dismissed before a district court may rely on that provision as a basis for dismissing the supplemental claims. This refers to all claims in the case, not just those claims asserted against a particular defendant. If a defendant faces only state claims, the court must exercise its supplemental jurisdiction over those claims as long as claims remain against other defendants for which original jurisdiction is present.

15A *Moore's Federal Practice*, § 106.66 (Matthew Bender 3d Ed. 2023). *See also Kiekisz v. Cuyahoga Cnty. Bd. of Comm'rs*, No. 1:21-cv-00264, 2021 WL 5193985, at *8 (N.D. Ohio Nov. 9, 2021) (court did "not exercise its discretion to decline supplemental jurisdiction" over state law claims where "other federal claims remain[ed]" against other defendants"). Though the undersigned recommends dismissal of the state law claims against the Judicial Defendants, the Court should not decline to exercise supplemental jurisdiction over the state law claims against the other defendants at this juncture.

K. Attorney fees and punitive damages

The Judicial Defendants argue that, under Ohio law, an award of punitive damages must be supported by an underlying award of actual damages. *See Shimola v. Nationwide Ins. Co.*,

495 N.E.2d 391, 394 (Ohio 1986) (court of appeals property vacated a punitive damages award where there was no proof of actual damages).  Because all of plaintiff's claims against them are subject to dismissal, the Judicial Defendants argue that there are no actual damages.  The Judicial Defendants also argue that plaintiff is precluded from an award of attorney fees under § 1988 because he is not the prevailing party.  42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of sections . . . 1983 [or] 1985, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs. . . .").  Plaintiff does not respond substantively to these arguments.  Given the foregoing analysis, the Court agrees that neither punitive damages nor attorney fees under § 1988 should be awarded to plaintiff.

### V.  Plaintiff's motion for injunctive relief (Doc. 23)

Although plaintiff's response in opposition includes a request in the caption for "inju[n]ction relief" (*See* Doc. 23 at PAGEID 454), plaintiff fails to include any argument pertaining to injunctive relief.  Plaintiff further fails to include a specific description of the relief sought.  Accordingly, to the extent plaintiff sought injunctive relief (Doc. 23), plaintiff's request should be **DENIED**.

### IT IS THEREFORE ORDERED THAT:

1.  Plaintiff's motion for leave to file a surreply (Doc. 28) is **DENIED**.

### IT IS THEREFORE RECOMMENDED THAT:

1.  Plaintiff's complaint be dismissed as to the Hamilton County Court of Common Pleas because it is not *sui juris*.

2.  Plaintiff's First Amendment claim (Count I) be dismissed as to the Judicial Defendants based on the doctrine of qualified immunity.

24

3. Plaintiff's Fourth Amendment unlawful search and seizure claim (Count II) be dismissed as to the Judicial Defendants for failure to sufficiently allege the violation of a constitutional right;

4. Plaintiff's Fourth Amendment false imprisonment claim (Count III) be dismissed as to defendants Heekin, Nestor, and Luebbers for failure to allege the violation of a constitutional right; and be dismissed as to defendant Ruehlman based on the *Rooker-Feldman* and judicial immunity doctrines;

5. Plaintiff's Fourth Amendment malicious prosecution claim (Count V) be dismissed as to the Judicial Defendants for failure to allege the violation of a constitutional right; and be dismissed as to defendant Ruehlman under the *Rooker-Feldman* and judicial immunity doctrines, as well;

6. Plaintiff's Fifth, Sixth, Eight, and Fourteenth Amendment claims (referenced within Counts I, II, III, IV, V, VI, and VII) be dismissed as to all of the Judicial Defendants for failure to allege the violation of a constitutional right;

7. Plaintiff's 42 U.S.C. § 1985(3) claims (Counts III and VI) be dismissed as to the Judicial Defendants for failure to state a claim upon which relief may be granted;

8. Plaintiff's 42 U.S.C. § 12203 claims (Counts I and IV) be dismissed as to the Judicial Defendants for failure to allege a violation of the ADA;

9. Plaintiff's state law claims against defendant Ruehlman (Counts VII-X, XII, and XIV-XV) should be dismissed on the basis of judicial immunity, which is incorporated under the PSTLA;

10. Plaintiff should not be granted injunctive relief, declaratory relief, punitive damages, or 42 U.S.C. § 1988 prevailing party attorney fees;

11. Plaintiff's "Motion for Inju[n]cti[ve] Relief" (Doc. 23) be **DENIED**.


Date: 6/15/2023

Karen L. Litkovitz
Chief United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTICT OF OHIO
## WESTERN DIVISION

DAVID GIPSON,                                  Case No. 1:22-cv-764
     Plaintiff,                               McFarland, J.
                                               Litkovitz, M.J.
     vs.

HAMILTON COUNTY COMMON
PLEAS COURT, *et al.*,
     Defendants.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).