## UNITED STATES DISTRICT COURT
## SOUTHERN DISTICT OF OHIO
## WESTERN DIVISION

DAVID GIPSON
     Plaintiff,

vs.

HAMILTON COUNTY COMMON
PLEAS COURT, *et al.*,
     Defendants.

Case No. 1:22-cv-764
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Pro se plaintiff David Gipson brings this civil action against Hamilton County, Ohio judges and officials, some of whom have been dismissed by a previous Order of this Court (*see* Doc. 34), alleging state and federal claims related to a January 15, 2021 incident at the Hamilton County Courthouse (Courthouse) (*see* Doc. 1). This matter is before the Court on defendants Sheriff Charmaine McGuffey, Lt. Dennis Brogan, Sgt. Michael Dreyer, Deputy Madison Speer, Deputy Nick Hnryak, Deputy Frederick Ober and Laura Hayslip's (the County Defendants') motion for summary judgment (Doc. 45); plaintiff's response (Doc. 51); and the County Defendants' reply (Doc. 57).

### I. Background

As summarized in this Court's prior Order and Report and Recommendation, plaintiff's complaint (Doc. 1) alleges that he and a man identified as Mr. Sullivan entered the Hamilton County Courthouse on January 15, 2021. (*See* Doc. 32 at PAGEID 1337). According to plaintiff, the County Defendants detained him, told him he could not record at the Courthouse with an electronic device based on a Hamilton County Court of Common Pleas Rule,[1] and took

---

[1] This Rule, Rule 33(C)(5)(d) (hereafter "Rule 33"), was renumbered effective March 1, 2023 to Rule 33(E)(4) but is otherwise identical. *See Common Pleas Local Rules,* HAMILTON COUNTY COURTS, *available at* https://hamiltoncountycourts.org/index.php/local-rules/ (last visited August 29, 2023) [https://perma.cc/4GP6-T9ZC]. It reads:

him before Judge Ruehlman, who improperly found him in contempt of court.  (*Id.* at PAGEID 1337-38).  Plaintiff alleges that the County Defendants violated his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights (Counts I, II, III, and V); conspired to violate his constitutional rights (Counts III and VI); violated his rights under 42 U.S.C. § 12203 (Counts I and IV); and violated various rights under state law (Counts VII-X, XII-XV[2]).  (*See* Doc. 1 at PAGEID 12-26).

The County Defendants argue that all claims against them should be dismissed.  They support their motion with a copy of the Hamilton County Court of Common Pleas entry reflecting plaintiff's direct contempt conviction on January 19, 2021 (Doc. 45-1); the disposition of plaintiff's appeal to Ohio's First District Court of Appeals (Doc. 45-2); a copy of the transcript of the January 19, 2021 continued-in-progress proceedings before Judge Ruehlman (Doc. 45-4); copy of Rule 33 as it was in effect on January 15, 2021 (Doc. 45-6); and the declarations of defendants Speer, Brogan, Dreyer, Ober, Hayslip, and Hrnyak (Docs. 45-3, 45-5, 45-7, 45-8, 45-9, and 45-10).

In defendant Speer's declaration, she states that she was working the Courthouse's main entrance security checkpoint on January 15, 2021 and screened plaintiff.  (Doc. 45-3, PAGEID 1894 at ¶¶ 11-13).  She further states that she observed plaintiff filming Mr. Sullivan, brought to

---

**(4)** Except when expressly permitted by a Hamilton County Judge under this Rule, or Local Rule 30, electronic devices shall not be used within any area of the Courthouse, including designated areas, to:

    **(a)** Take or record a photograph, video or other visual image, or;

    **(b)** Record, transmit or receive audio or sound.

*Id.*  Hamilton County Court of Common Pleas Rule 30, in turn, governs media coverage of court proceedings.  *See id.*
[2] Plaintiff's complaint fails to allege an eleventh cause of action.  (*See* Doc. 1 at PAGEID 20-21).  Count X is a state law claim for negligent and intentional infliction of emotional distress, and the next cause of action is Count XII, a state law claim for prohibited disclosures of protected health information/invasion of privacy.  (*Id.*).

their attention the recently changed Rule 33 prohibiting recording, radioed her supervisor to speak with plaintiff, and asked plaintiff to wait for her supervisor to arrive. (*Id.*, PAGEID 1895 at ¶¶ 15-19). Defendant Speer states that she did not detain or restrain plaintiff at any time during their encounter. (*Id.* ¶ 20). Defendant Speer did not interact with plaintiff again until Judge Ruehlman ordered her to testify during the contempt proceedings. (*Id.*, PAGEID 1895-96 at ¶¶ 24 and 26).

In defendant Brogan's declaration, he states that he was called down by defendant Speer regarding Mr. Gipson's recording. (Doc. 45-5, PAGEID 1918 at ¶¶ 15 and 17). He further states that he tried to explain Rule 33 to plaintiff, obtained a hard copy of the Rule for plaintiff, and plaintiff voluntarily accompanied him and defendants Dreyer and Hrnyak around the Courthouse to locate a judge that could explain the Rule him—ultimately locating Judge Ruehlman. (*Id.*, PAGEID 1918-19 at ¶¶ 18-26, 28-29). Defendant Brogan states that he did not detain plaintiff or consider him to be in custody. (*Id.*, PAGEID 1918 at ¶ 22).

Defendant Hrnyak's declaration mirrors the sequence of events described by defendants Speer and Brogan, adding that he received the initial call from defendant Speer regarding Mr. Gipson's recording and arrived at the security checkpoint prior to defendant Brogan taking command as the ranking supervisor. (Doc. 45-10 at PAGEID 1933-34). Defendant Dreyer's declaration also mirrors those of defendants Speer and Brogan, including that no one handcuffed, arrested, detained, or placed plaintiff in custody. (*See* Doc. 45-7, PAGEID 1925 at ¶ 25). Defendant Dreyer further admits to a "brief but heated verbal exchange" with plaintiff during which both parties "raised [their] voices[,]" but he states that he nevertheless did not arrest or detain plaintiff before Judge Ruehlman's contempt rulings. (*Id.*, PAGEID 1926 at ¶¶ 30-32).

In defendant Ober's declaration, he states that he placed Mr. Sullivan in handcuffs following Judge Ruehlman's first contempt ruling, transported him to the Hamilton County Justice Center, and conducted a search, during which he found a hidden body camera. (Doc. 45-8, PAGEID 1929 at ¶¶ 8-10). Defendant Ober returned to the Courthouse and reported this discovery to Judge Ruehlman. (*Id.* ¶ 11). Defendant Ober's declaration details his encounter with Mr. Sullivan and only mentions encountering Mr. Gipson in Judge Ruehlman's courtroom. (*See id.*).

In defendant Hayslip's declaration, she describes her job duties as performing administrative tasks on behalf of Judge Ruehlman, maintaining order in his courtroom, and enforcing his rules. (Doc. 45-9, PAGEID 1930 at ¶¶ 3-4). One such rule required defendant Hayslip to collect cellular phones of non-lawyers and non-law enforcement officers that entered Judge Ruehlman's courtroom, distribute associated claim tickets, and put the phones next to Judge Ruehlman's bench. (*Id.*, PAGEID 1930-31 at ¶¶ 5-8). Defendant Hayslip states that all of her actions on January 15, 2021 involving plaintiff and Mr. Sullivan were "at the direction or on behalf of" Judge Ruehlman. (*Id.*, PAGEID 1931 at ¶ 9).

The evidentiary support for plaintiff's opposition is limited. Plaintiff's complaint appears to be notarized but does not indicate that it was "sworn to by the affiant[,]" *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002) (discussing the definition of an affidavit); rather, the notary indicates that she "was visited by a man properly identified or known to me to be David Gipson and he did establish this record before me and sign it of the purposes stipulated herein. . . ." (Doc. 1 at PAGEID 28). Because plaintiff did not swear an oath[3] before the notary or

---

[3] *Swear*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("2. To take an oath."); *oath*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("1. . . . The legal effect of an oath is to subject the person to penalties for perjury if the testimony is false.").

otherwise make a declaration[4] as to the truth of his allegations, the Court cannot consider

plaintiff's complaint as evidence rebutting the County Defendants' motion. *See* Fed. R. Civ. P.

56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by . . . citing to affidavits or declarations . . . .").

Plaintiff filed a series of "affidavits" and other filings on the day he filed his response in

opposition to the County Defendants' motion for summary judgment and several days prior.

Four of the documents, though including the declarant's signature and representation that the

statements are made under penalty of perjury, are undated and therefore cannot be considered as

evidence rebutting the County Defendants' motion for summary judgment. (*See* Doc. 49 at

PAGEID 2557; Doc. 50 at PAGEID 2563; Doc. 51 at PAGEID 2582; and Doc. 53 at PAGEID

2594). *See* 28 U.S.C. § 1746. *See also Counts v. Kraton* Polymers, U.S. LLC, 260 F. App'x

825, 829 (6th Cir. 2008) (district court did not abuse its discretion by striking an undated

declaration for failing to comply with 28 U.S.C. § 1746). Another filing is signed and dated but

not notarized and does not otherwise indicate that the statements in it were made under penalty

of perjury. (Doc. 55 at PAGEID 2609). *See* 28 U.S.C. § 1746. Only two nearly identical

"affidavits" regarding a December 23, 2020 encounter with defendant Brogan, one by plaintiff

and one by Mr. Sullivan, satisfy the requirements of 28 U.S.C. § 1746. (*See* Doc. 52 at PAGEID

2588, Doc. 54 at PAGEID 2600).

Nearly two months after the County Defendants filed their reply, plaintiff proffered a

nearly 1,500-page "Appendix of Exhibits." (*See* Doc. 60). The continued supplementation of

plaintiff's briefing after the filing of the County Defendants' reply memorandum violates the

---

[4] An unsworn "declaration must comport to the following form: 'I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).'" *Peters*, 285 F.3d at 475 (quoting 28 U.S.C. § 1746(2)).

local rules of this Court. *See* S.D. Ohio Civ. R. 7.2(a)(2) (only a response and reply memoranda are allowed absent "leave of court for good cause shown"), (d) (evidence related to a motion is due upon submission of "the primary memorandum of the party relying upon such evidence"), and (e) (evidence in opposition to a motion "shall be attached to the memorandum or included in an appendix thereto").[5] Thus, the Court does not consider this document (Doc. 60) or its voluminous attachments.

## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper unless the nonmoving party "establish[es] genuinely disputed material facts by 'citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute.'" *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986*); Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

---

[5] In his memorandum in response to the County Defendants' motion, plaintiff also references an alleged transcript of his recording of the January 15, 2021 incident that was filed earlier in this case. (*See, e.g.*, Doc. 51, PAGEID 2565 at ¶ 1 (referring to Doc. 28-1)). Leaving aside that the alleged transcript was not attached to his response, *see* S.D. Ohio Civ. R. 7.2(e), the document does not satisfy the requirements of 28 U.S.C. § 1746. (*See* Doc. 28-1 at PAGEID 1333).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter the party's duty on a summary judgment motion to support his factual assertions with admissible evidence. *Maston v. Montgomery Cnty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)).

### III. Analysis

The County Defendants argue that they are shielded by several types of immunity from plaintiff's claims against them, and that the Hamilton County Sheriff's Office, in particular, may not be sued. The Court begins with the latter argument.

A. Hamilton County Sheriff's Office

The County Defendants argue that Ohio counties are not *sui juris* and that it is redundant to name both the Hamilton County Sheriff's Office and Charmaine McGuffey in her official capacity as defendants. Plaintiff does not offer a cogent response to this argument. The Court agrees that the Hamilton County Sheriff's Office is not *sui juris*. *See* Fed. R. Civ. P. 17(b)(3) (Ohio law determines a non-individual, non-corporate defendant's capacity to be sued); *Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) ("[U]nder Ohio law, a county sheriff's office is not a legal entity that is capable of being sued.") (citations omitted). Plaintiff's claims should be dismissed as to the Hamilton County Sheriff's Office.

B. Quasi-judicial and qualified immunity

The County Defendants argue that they are entitled to quasi-judicial immunity because, during their interactions with plaintiff on January 15, 2021, they were "performing as courthouse security and working at the direction of the court in the enforcement of the court's local rules" or, in the case of defendant Hayslip, "working for Judge Ruehlman directly. . . ." (Doc. 45 at PAGEID 1875). They otherwise argue that all of the County Defendants are entitled to qualified immunity.

Absolute quasi-judicial immunity flows from the "long-recognized common-law doctrine" of judicial immunity, which "shield[s] judges from collateral attacks challenging a judge's actions taken in her official judicial capacity." *Morgan v. Bd. of Pro. Resp. of the Supreme Ct. of Tenn.*, 63 F.4th 510, 518 (6th Cir. 2023). "[T]hose persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer" are entitled to absolute quasi-judicial immunity. *Id.* (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)). Courts are to look at "the nature of the function performed, not

the identity of the actor who performed it" to determine whether quasi-judicial immunity applies. *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)).

"Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (2006)).  Thus, when a defendant raises qualified immunity, the plaintiff must show that (1) "a constitutional violation has occurred" and (2) "the violation involved a clearly established constitutional right of which a reasonable person would have known." *Id.* (citing *Sample v. Bailey*, 409 F.3d 689, 695-96 (6th Cir. 2005)).  The Court may consider these elements in any order.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  "[T]o impose individual liability upon a [state official] for engaging in unconstitutional misconduct, it is a plaintiff's burden to specifically link the [official]'s involvement to the constitutional infirmity. . . ." *Burley v. Gagacki*, 834 F.3d 606, 615 (6th Cir. 2016).  *See also Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983.").

It is clear that "enforcing or executing a court order is intrinsically associated with a judicial proceeding" and invokes quasi-judicial immunity.  *Bush*, 38 F.3d at 847.  Performance of courthouse security,[6] however, is not clearly deserving of judicial immunity.  In *McPherson v.*

---

[6] In addition to its recording prohibition, Rule 33 also states:

> For purposes of these Local Rules, court security officers are individuals employed to perform security duties at the Courthouse, including Hamilton County Sheriff Deputies and the Criminal Bailiffs assigned to Municipal Court.  Court security officers are deemed by the Court to be officers of the Court they serve when acting in their official capacity as court security officers in enforcing this and other Local Rules.

Hamilton Cnty. Common Pleas Court R. 33(C)(2), *Common Pleas Local Rules*, HAMILTON COUNTY COURTS,

*Kelsey*, the defendants argued that courthouse security was a "judicial function . . . commonly delegated to court security officers." 125 F.3d 989, 992 (6th Cir. 1997). The Sixth Circuit found the question a "close" one and ultimately did not decide it—given that its qualified immunity analysis was dispositive. *Id.* at 993. Here, the declarations proffered by the County Defendants demonstrate that they were engaged in courthouse security and administrative functions during their interactions with plaintiff. The extent to which their interactions with plaintiff derived from functions judicial in nature, however, is less clear. *See id.* The Court therefore begins with qualified immunity, which is largely dispositive.

1. *First Amendment*

As best the Court can decipher, plaintiff's First Amendment claim against the County Defendants derives from their enforcement of Rule 33's recording prohibition. (*See* Doc. 1 at PAGEID 12). The County Defendants argue that it is undisputed that they did not unilaterally restrict plaintiff's speech but simply enforced the Hamilton County Court of Common Pleas' local rule. Plaintiff seems to argue in response that the recording prohibition referenced by the County Defendants (Rule 33(C)(5)(d)) was not in effect on January 15, 2021. (See Doc. 51 at PAGEID 2574). Even if this were the case, however, the prior version of the Rule 33 proffered by plaintiff as the one in effect on the date at issue also includes a recording prohibition. (See Doc. 51 at PAGEID 2576 ("[T]he operation of any . . . sound or image recording . . . device is prohibited in any courtroom or hearing room, . . . judge's chambers or ancillary area (to be determined in the sole discretion of the Court) without the express permission of the Court.")).

"In a limited public forum, the government 'is not required to and does not allow persons to engage in every type of speech.'" *Enoch v. Hamilton Cnty. Sheriff's Off.*, 818 F. App'x 398,

---

*available at* https://hamiltoncountycourts.org/index.php/local-rules/ (last visited August 29, 2023) [https://perma.cc/4GP6-T9ZC].

405 (6th Cir. 2020) (quoting *Hartman v. Thompson*, 931 F.3d 471, 479 (6th Cir. 2019)).[7] "When public officials implement validly enacted state laws that no court has invalidated, their conduct typically satisfies the core [qualified immunity] inquiry—the 'objective reasonableness of an official's conduct'—that the immunity doctrine was designed to test." *Id.* at 405 (alteration in original) (quoting *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440-41 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))). *See also id.* (quoting *Hartman*, 931 F.3d at 479) ("The government may restrict speech so long as the restrictions are viewpoint neutral and 'reasonable in the light of the purpose to be served by the forum.'") (internal quotations omitted). In *Enoch*, the Sixth Circuit held that sheriff's deputies enjoyed qualified immunity against First Amendment claims related to their enforcement of a prior version of Rule 33, which also included a recording prohibition (*see* Doc. 51 at PAGEID 2576). *See id.* at 400, 405.

The County Defendants have presented the declarations of defendants Speer, Hrnyak, Dreyer, and Brogan, which demonstrate that they stopped plaintiff from recording in the Courthouse as a function of their enforcement of Rule 33. (*See* Doc. 45-3, PAGEID 1895 at ¶ 16; Doc. 45-5, PAGEID 1918 at ¶ 18; Doc. 45-7, PAGEID 1925 at ¶ 21; and Doc. 45-10, PAGEID 1934 at ¶ 17). *See Enoch*, 818 F. App'x 405. Defendant Hayslip's declaration similarly demonstrates that any action taken by her towards plaintiff on the date of the incident at issue was directly pursuant to Judge Ruehlman's courtroom rules. (*See* Doc. 45-9, PAGEID 1930-31 at ¶¶ 5, 9). Plaintiff offers no cogent argument or evidence demonstrating that any such rule was invalid or any such restriction was unreasonable or not viewpoint neutral.

---

[7] As in *Enoch*, the parties do not appear to dispute that the hallways outside courtrooms in the Courthouse are a limited public forum.

Finally, defendant Ober's declaration demonstrates that his actions on the date of the incident at issue were directed at Mr. Sullivan, not plaintiff, pursuant to Judge Ruehlman's order finding Mr. Sullivan in contempt of court and his enforcement of Rule 33.  (*See* Doc. 45-8, PAGEID 1929 at ¶¶ 8-13).  *See Rieves v. Town of Smyrna, Tenn.*, 959 F.3d 678, 697 (6th Cir. 2020) ("[A]n official is protected by absolute quasi-judicial immunity when he acts pursuant to a *valid* court order. . . .").  Plaintiff offers no evidence showing that conduct attributable to defendant Ober violated his constitutional rights.

For these reasons, the County Defendants are entitled to qualified immunity on Count I of plaintiff's complaint.

### 2. *Fourth Amendment*

Plaintiff's complaint references several Fourth Amendment claims.  (*See* Doc. 1, PAGEID 13 at ¶ 36 (Count II) ("searching and seizing" plaintiff and his electronic device without "a warrant, probable cause or any legal justification"); PAGEID 14 at ¶ 39 (Count III) ("warrantless arrest and continued detention . . . unsupported by probable cause"); and PAGEID 16 at ¶ 46 (Count V) (malicious prosecution)).

As explained in its prior Order and Report and Recommendation, the Court understands plaintiff's first Fourth Amendment claim in Count II to refer to a search and seizure that allegedly occurred just after his routine security check upon entering the Courthouse.[8]  (*See* Doc. 32 at PAGEID 1347 n.7).  The County Defendants rely on defendants Hrnyak, Brogan, and Dreyer's declarations to demonstrate that plaintiff accompanied them voluntarily to find a judge in the Courthouse to explain Rule 33's recording prohibition.  (*See* Doc. 45-5, PAGEID 1918 at ¶¶ 21-22; Doc. 45-7, PAGEID 1925 at ¶¶ 23-25; Doc. 45-10, PAGEID 1934 at ¶¶ 22-24; *see*

---

[8] Plaintiff does not appear to challenge this initial, routine security check.

*also* Doc. 45-3, PAGEID 1895 at ¶¶ 19-20 (Defendant Speer states she told plaintiff she was not detaining him and did not place him in custody or otherwise restrain him)).  The County Defendants also note that plaintiff's *own exhibit* offered in support of his objections to this Court's previous Order and Report and Recommendation is consistent with their declarations on this point.  (*See, e.g.*, Doc. 33-13 at PAGEID 1776 ("[Defendant Brogan]: . . . We will take you up in front of [J]udge L[u]ebbers and she will take care of it, you can talk to her.  [Mr. Sullivan]: *Let's go see Luebbers.  Come on*.") (emphasis added)).  The County Defendants argue that any seizure of plaintiff's property occurred only after his contempt conviction and upon being booked into jail, and such a seizure does not violate the Fourth Amendment.

In his response, plaintiff appears to rely on defendant Brogan's alleged statement: "We will take you up in front of [J]udge Luebbers" as establishing that he was not free to leave. (Doc. 51 at PAGEID 2567; *see also id.* at PAGEID 2565 (referencing a similar statement by defendant Hrnyak)).  Plaintiff's argument, however, is not "concrete evidence from which a reasonable juror could return a verdict in his favor. . . ."  *Anderson*, 477 U.S. at 256.  Moreover, elsewhere in his response, plaintiff undercuts his own position by offering the following alleged statement by defendant Dreyer: "I have explained to you, if you wanna leave, you can leave. . . ." (Doc. 51 at PAGEID 2569).  (*See also id.* at PAGEID 2566 (Defendant Hrnyak allegedly said: "Are you guys [meaning plaintiff and Mr. Sullivan] going to leave?")).  Plaintiff offers no evidence to support his characterization of this encounter as involuntary detention.

The County Defendants have presented evidence that they did not search or seize plaintiff before Judge Ruehlman found plaintiff in contempt of court.  Plaintiff fails to rebut this evidence with any evidence of his own demonstrating that he was illegally searched or seized prior to his appearance before Judge Ruehlman.  Thus, plaintiff cannot show a constitutional violation, and

defendants Speer, Hrnyak, Dreyer, and Brogan are entitled to qualified immunity on Count II of his complaint.

If the Court were to construe Count II or any other Count in plaintiff's complaint as asserting an illegal seizure claim against defendant Hayslip or defendant Ober, these defendants are also entitled to qualified immunity. As for defendant Hayslip, plaintiff acknowledges that she explained to him that Judge Ruehlman had a generally applicable rule that cell phones must be turned over in exchange for a claim ticket while in his courtroom. (*See* Doc. 51 at PAGEID 2570-72). At this point, as explained above, no evidence suggests that plaintiff had to remain in Judge Ruehlman's courtroom or, by extension, turn over his cell phone. When a plaintiff has turned over property "willingly[,]" that turnover "cannot form the basis for a claim that [the defendant] illegally seized [his] property." *Kent v. Gantt*, No. 2:13-cv-459, 2013 WL 5424710, at *5 (S.D. Ohio Sept. 26, 2013).

As for defendant Ober, plaintiff offers no evidence to support an illegal seizure by him. "[I]t is well settled that police may take property into custody during a routine inventory search incident to arrest." *Payne v. Lowry*, No. 18-11154, 2019 WL 4316266, at *3 (E.D. Mich. Sept. 11, 2019) (citing *South Dakota v. Opperman*, 428 U.S. 364 (1976)). While defendant Ober's declaration describes arresting Mr. Sullivan only, it makes clear that defendant Ober was in contact with plaintiff and Mr. Sullivan on January 15, 2021 "in the Courtroom of Judge Robert Ruehlman." (Doc. 45-8, PAGEID 1929 at ¶ 6). Plaintiff does not offer evidence to suggest that defendant Ober interacted with plaintiff in any other capacity.

Plaintiff has failed to present any evidence creating a genuine issue of material fact that defendants Hayslip or Ober unconstitutionally searched or seized him or his property. As a

result, these defendants are also entitled to qualified immunity on any such claim asserted in plaintiff's complaint.

Count III, although captioned as a conspiracy claim, appears to allege a false arrest claim against the County Defendants. (*See* Doc. 1, PAGEID 14 at ¶ 39 ("[A] warrantless arrest and continued detention of a person unsupported by probable cause . . . violates rights protected by the Fourth . . . Amendment[]. . . .")). "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) (quoting *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)).

The County Defendants argue that the only time plaintiff was seized on January 15, 2021 was pursuant to the execution of Judge Ruehlman's orders finding plaintiff in contempt of court. Plaintiff does not appear to respond other than to reiterate his argument, unsupported by evidence, that he was detained. (*See, e.g.*, Doc. 51, PAGEID 2565 at ¶ 1; PAGEID 2567 at ¶ 13).

As noted above, "an official is protected by absolute quasi-judicial immunity when he acts pursuant to a *valid* court order because 'enforcing or executing a court order is intrinsically associated with a judicial proceeding.'" *Rieves*, 959 F.3d at 697 (quoting *Cooper v. Parrish*, 203 F.3d 937, 948 (6th Cir. 2000)). Because plaintiff did not appeal his contempt convictions or proffer evidence to rebut their validity (*see* Doc. 45-1 (contempt conviction) and Doc. 45-2 at PAGEID 1890 (state court appellate decision finding that plaintiff did not appeal the contempt conviction)), the County Defendants are entitled to quasi-judicial immunity to the extent that this claim derives from any search or seizure related to the enforcement of plaintiff's contempt convictions. As explained above, plaintiff has presented no evidence to suggest that he was

seized at any *other* point on January 15, 2021.  The County Defendants are therefore entitled to quasi-judicial immunity or qualified immunity on Count III of plaintiff's complaint.

With respect to Count V of plaintiff's complaint, the County Defendants argue that plaintiff has failed to show that any of the County Defendants made, influenced, or participated in the decision to prosecute; or that the contempt proceeding resulted in plaintiff's favor—both necessary elements of a malicious prosecution claim.  Plaintiff appears to argue in response that his contempt conviction was invalid.  (*See, e.g.*, Doc. 51 at PAGEID 2573 (referring to a "sham court" and Judge Ruehlman having "no jurisdiction")).  Only plaintiff's "motion for the return of his property," however, was ultimately resolved in his favor; plaintiff did not appeal his contempt conviction.  (*See* Doc. 45-2 at PAGEID 1890).  Plaintiff's malicious prosecution claim therefore fails.  *See Sykes v. Anderson*, 625 F.3d 294, 309 (6th Cir. 2010) (To state a Fourth Amendment malicious prosecution claim, "the criminal proceeding must have been resolved in the plaintiff's favor.") (citation omitted).  Thus, the County Defendants are entitled to qualified immunity on Count V of plaintiff's complaint.

### 3.  *Fifth, Sixth, Eighth, and Fourteenth Amendments*

Defendants argue that plaintiff makes "passing references" to violations of the Fifth, Sixth, Eighth, and Fourteenth Amendments with "no factual support. . . ."  (Doc. 45 at PAGEID 1880).  The Court agrees.  (*See, e.g.*, Doc. 1, PAGEID 14 at ¶ 40; PAGEID 15 at ¶ 43; PAGEID 16-17 at ¶¶ 46-47; and PAGEID 18-19 at ¶ 52).  Plaintiff offers no evidence in response that would allow "a rational trier of fact to find" in his favor.  *Matsushita*, 475 U.S. at 587.  Absent supporting factual allegations to support these constitutional claims, plaintiff cannot meet the first prong of the qualified-immunity analysis as to his Fifth, Sixth, Eighth, and Fourteenth

Amendment claims against the County Defendants, and any such claims contained in his complaint should be dismissed.

As to plaintiff's Fourteenth Amendment claim in particular, which appears to relate to the return of his iPad and iPhone, the Court notes that plaintiff does appear to allege in his complaint that the state court of appeals ordered the return of his property and that he had started the process of return.  (Doc. 1, PAGEID 11 at ¶¶ 24-26; PAGEID 18 at ¶ 50).  But plaintiff has not "plead[ed] and prove[d] that state remedies for redressing the wrong are inadequate."  *Freeman v. Spoljaric*, ___ F. Supp. 3d ____, No. 1:22-cv-203, 2023 WL 2743764, at *6 (S.D. Ohio Mar. 31, 2023) (quoting *Vicory v. Walton*, 721 F.2d 1062, 1065-66 (6th Cir. 1983)).  "If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury."  *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 587-88 (6th Cir. 2004).  A plaintiff "may not seek relief under [42 U.S.C. §] 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress [his] due process violations."  *Id.* at 588.  Plaintiff has failed to sufficiently plead that the post-deprivation tort remedies available under Ohio law are inadequate to adjudicate his property-loss claim.  *See Fox v. Van Oosterum*, 176 F.3d 342, 349 (6th Cir. 1999) (citing *Hudson v. Palmer*, 468 U.S. 517, 534-36 (1984)) ("State tort remedies generally satisfy the postdeprivation process requirement of the Due Process Clauses.").  In fact, plaintiff has offered no evidence at all regarding the status of state remedies.  Thus, the County Defendants are entitled to qualified immunity on plaintiff's Fourteenth Amendment claim.

### 4.  *42 U.S.C. § 12203*

The County Defendants argue that plaintiff has provided no factual basis to support a claim that any of the County Defendants retaliated against him in opposition to an act or practice

made unlawful by the ADA, or coerced, intimidated, interfered with, or threatened plaintiff in connection with his exercise or enjoyment of his ADA rights.  *See* 42 U.S.C. §§ 12203(a) and (b).[9]  In plaintiff's response, he seems to argue that defendant Dreyer had threatened "ramifications"[10] related to prior conduct by plaintiff and Mr. Sullivan.  (*See* Doc. 51, PAGEID 2573 at ¶ 77).

In Count I (42 U.S.C. § 1983: Violation of Free Speech Rights — First Amendments and Title 42 U.S.C. §12203), plaintiff alleges that his rights under Title "42 U.S.C. §12203 ADA" were violated because "Hamilton County Sheriffs [] Dreyer, Brogan, Ober, [and] Hnryak Speers, did threaten or interfere with an individual namely (Mr. Sullivan) while I encouraged Mr. Sullivan attempting to exercise the enjoyment of, his rights granted or protected."  (*Id.*, PAGEID 12 at ¶ 30).  Plaintiff then states that he had "an invisible disability of Aplastic anemia. . . ." (*Id.*).  In Count IV, plaintiff seems to allege that defendant Dreyer retaliated against him and coerced him because he and Mr. Sullivan had filed a complaint related to an interaction at the Courthouse.  (*See id.*, PAGEID 15 at ¶ 43).

Plaintiff offers no evidence to support these claims.  The only declarations submitted by plaintiff that the Court may consider relate to an alleged conversation between plaintiff, Mr. Sullivan, and defendant Brogan on December 23, 2020, in which plaintiff and Mr. Sullivan

---

[9] Under 42 U.S.C. § 12203(a) ("Retaliation"): "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." Under 42 U.S.C. § 12203(b) ("Interference, coercion, or intimidation"):

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

*Id.*

[10] This appears to refer to an alleged statement by defendant Dreyer in one of plaintiff's non-evidentiary filings: "I've bent over backward for you, Mr. Sullivan. . . .  You cannot come in and *insult my officers any way that you choose* with no ramifications."  (Doc. 53 at PAGEID 2591 (emphasis added)).

confront defendant Brogan with vague allegations about their inability to access the Courthouse due to the conduct of certain sheriff's deputies.  (*See* Docs. 52, 54).  The only potential reference to disability in these declarations is Mr. Sullivan's comment that he has "to walk a full block with a broken leg."  (Doc. 52 at PAGEID 2587; Doc. 54 at PAGEID 2599).  These declarations fail to establish a connection between a disability of plaintiff or Mr. Sullivan and threats or coercion by any of the County Defendants.  Thus, these declarations would not lead a rational juror to conclude that any of the County Defendants are liable under 42 U.S.C. § 12203.  The County Defendants are entitled to qualified immunity on Counts I and IV of plaintiff's complaint.  *See Bartell v. Lohiser*, 215 F.3d 550, 556 (6th Cir. 2000) ("[T]his Circuit, as well as a number of our sister Circuits, have granted state employees qualified immunity against ADA and Rehabilitation Act claims.").

>   5.   *42 U.S.C. § 1985*

The County Defendants argue that they are entitled to qualified immunity on plaintiff's § 1985 conspiracy claims because he has not sufficiently alleged the violation of any of his constitutional rights and the conspiracy allegations have no factual support.  In response, plaintiff reiterates his conspiracy claims without supporting evidence.  (*See* Doc. 51 at PAGEID 2573 ([Judge Ruehlman] has admitted to fraud on the court with his coconspirators."); PAGEID 2581 ([Defendant] Haslip [r]ecorded herself with [defendant Hrnyak] conspiring to make up an order.")).

Plaintiff cannot succeed on his § 1985 conspiracy claim because there is "no underlying constitutional violation that injured h[im]."  *Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009).  *See also Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)) ("It is 'well-settled that conspiracy

claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'"). The County Defendants are therefore entitled to qualified immunity on plaintiff's § 1985 conspiracy claims asserted in Counts III and VI.

    C. <u>Statutory immunity</u>

The County Defendants argue that they enjoy immunity from plaintiff's state law claims in their individual or representative capacities under Ohio's Political Subdivision Tort Liability Act (PSTLA), Ohio Rev. Code § 2744 *et seq.* The County Defendants argue that on January 15, 2021, they each were performing governmental functions in good faith and within the scope of their employments to preclude liability in their individual capacities. *See* Ohio Rev. Code §§ 2744.01(C)(2)(a), (b), and (f) ("Governmental functions" are defined to include the provision of police services or protection, the power to preserve the peace and prevent and suppresses disturbances, and quasi-judicial functions). They also argue that no exceptions to Hamilton County's political subdivision immunity apply as it relates to plaintiff's official-capacity claims. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (Official-capacity suits are generally "only another way of pleading an action against an entity of which an officer is an agent.") (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).

Plaintiff's response to these arguments is difficult to follow, but seems to be that the County Defendants were acting either outside the scope of their employments or in a wanton, malicious, or bad-faith manner because they were enforcing an invalid local rule and they either fabricated or destroyed evidence related to plaintiff. (Doc. 51 at PAGEID 2581 (Defendants Hayslip and Hrnyak "conspire[ed] to make up an order.") ("All defendants are barred as said Rule was not authorized by law. . . .") (Defendants Brogan, Hayslip, and Dreyer engaged in the

20

"destruction of evidence" related to a December 3, 2020 conversation with defendant Dryer,

which demonstrates "malicious purpose" and "bad faith").   Plaintiff does not appear to address

the County Defendants' argument related to Hamilton County's immunity under the PSTLA.

To determine whether a political subdivision enjoys immunity under the PSTLA, Ohio

courts employ a three-tiered analysis.  *Hortman v. Miamisburg*, 852 N.E.2d 716, 718 (Ohio

2006).  Courts are to first examine whether the political subdivision falls within the general

immunization from liability under Ohio Revised Code § 2744.02(A).  *Id.*  Courts are to next

analyze whether an exception to immunity set out in Ohio Revised Code § 2744.02(B)(1)-(5)

applies.  *Id.*  Finally, courts are to determine whether a defense under Ohio Revised Code §

2744.03 applies to reinstate immunity.  *Id.*

Under the first tier, a "political subdivision" includes counties such as Hamilton County.

*Id.* § 2744.01(F).  Under Ohio Rev. Code § 2744.02(A)(1):

> [T]he functions of political subdivisions are hereby classified as governmental
> functions and proprietary functions.  . . .  [A] political subdivision is not liable in
> damages in a civil action for injury, death, or loss to person or property allegedly
> caused by any act or omission of the political subdivision or an employee of the
> political subdivision in connection with a governmental or proprietary function.

*Id.*  Hamilton County is therefore generally immune for purposes of the first tier.

Under the second tier, the first exception concerns the negligent operation of a motor

vehicle and does not apply.  *See id.* § 2744.02(B)(1).  The second exception concerns proprietary

functions[11] and does not apply.  *See id.* § 2744.02(B)(2).  The third exception concerns the

negligent maintenance of public roads and does not apply.  *See id.* § 2744.02(B)(3).  The fourth

exception concerns negligence related to physical defects on or in public properties and does not

---

[11] The definition of proprietary functions (Ohio Rev. Code § 2744.01(G)(1)(a)) excludes functions set forth in Ohio
Revised Code § 2744.01(C)(2), including "[t]he provision or nonprovision of police . . . services or protection;"
"[t]he power to preserve the peace . . . and to protect persons and property;" and "quasi-judicial functions. . . ." *Id.*
§§ 2744.01(C)(2)(a), (b), and (f).

apply.  *See id.* § 2744.02(B)(4).  The fifth exception concerns instances in which an Ohio statute

otherwise expressly imposes liability on a political subdivision and does not apply.  *See id.* §

2744.02(B)(5).

Because Hamilton County does not lose its immunity under any of these exceptions, the

third tier does not apply.  Hamilton County, via Charmaine McGuffey in her official capacity,

should be determined immune from the state law claims asserted in Counts VII through XVI of

plaintiff's complaint under the PSTLA.  *See Stillwagon v. City of Delaware*, 175 F. Supp. 3d

874, 907-08 (S.D. Ohio 2016) ("Ohio courts have held that political subdivisions are immune

from intentional torts such as malicious prosecution. . . .") (citations omitted).

Under Ohio Revised Code § 2744.03(A)(6), immunity also applies to a political

subdivision's employees except in three circumstances:

> (a) The employee's acts or omissions were manifestly outside the scope of the
> employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith,
> or in a wanton or reckless manner;
>
> (c) Civil liability is expressly imposed upon the employee by a section of the
> Revised Code.  Civil liability shall not be construed to exist under another section
> of the Revised Code merely because that section imposes a responsibility or
> mandatory duty upon an employee, because that section provides for a criminal
> penalty, because of a general authorization in that section that an employee may
> sue and be sued, or because the section uses the term "shall" in a provision
> pertaining to an employee.

*Id.* §§ 2744.03(A)(6)(a)-(c).

Nothing submitted by plaintiff in support of his response to the County Defendants'

motion for summary judgment creates genuine issues of material fact that the County Defendants

took actions placing them under Ohio Revised Code § 2744.03(A)(6)(a) or (b)—the only

subsections invoked by plaintiff.  No evidence supports plaintiff's claims that the County

Defendants were enforcing an invalid Rule or that any of the County Defendants either fabricated or destroyed evidence related to the contempt proceedings.[12] The County Defendants should be determined individually immune under the PSTLA from the state law claims asserted in Counts VII through XVI of plaintiff's complaint.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The County Defendants' motion for summary judgment (Doc. 45) be **GRANTED** and that each of plaintiff's claims be dismissed against the County Defendants for the reasons explained herein.

Date: 11/20/2023

Karen L. Litkovitz
United States Magistrate Judge

---

[12] If the Court were to construe a state law claim against defendant McGuffey in her individual capacity in Count VII of the complaint (*see* Doc. 1, PAGEID 18-19), plaintiff fails to allege that the conduct described in Count VII of the complaint would fall within any exception to immunity for political subdivision employees. There is also no evidence to support any claim against defendant McGuffey in her individual capacity.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTICT OF OHIO
## WESTERN DIVISION

JAMES SULLIVAN,                                   Case No. 1:22-cv-763
     Plaintiff,                               McFarland, J.
                                                  Litkovitz, M.J.
     vs.

HAMILTON COUNTY COMMON
PLEAS COURT, et al.,
     Defendants.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).