UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 540 POTTER STEWART U.S.
COURTHOUSE CINCINNATI, OHIO 45202-3988
DAVID GIPSON,
V.
HAMILTON COUNTY COURT OF COMMON PLEAS, et al.
RESPONDENTS- CHRMAINE Mc GUFFEY, LIEUTENANT DENNIS
BROGAN, SGT. MICHEAL DRYER, DEPUTY SPEERS,
DEPUTY HRNYAK, DEPUTY. OBER. LARA HAYSLIP

UNAUTHORIZED COUNTY (REMOTE DIVISON) ROBERT RUEHLMAN,
THOMAS HEEKIN, JODY LUEBBERS, AND TERRENCE NESTOR.
_____
On Appeal from the United States District Court, Southern District of Ohio,
CASE NUMBER ORIGINAL 1:22-cv-764
CASE NUMBER 1:23 3575
_____

David Gipson
Plaintiff
10 Lakefield Dr.
Milford Ohio
[45150]
Davidgipson345@gmail.com

                              Pamela J. Sears (0012552)
                              Assistant Prosecuting Attorney
                              HAMILTON COUNTY
                              PROSECUTOR'S OFFICE
                              230 E. Ninth Street, Suite 4000
                              Cincinnati, OH 45202
                              DDN: (513) 946-3082 (Sears)
                              Pamsears@hcpros.org
                              LINDA L. WOEBER (0039112)
                              COOPER D. BOWEN (0093054)
                              MONTGOMERY JONSON LLP

## TABLE OF CONTENS

## Contents

TABLE OF CONTENS ................................................................................................................ii

TABLE OF AUTHORITIES .......................................................................................................iii

I. STATEMENT OF THE CASE .............................................................................................. - 1 -

II. STATEMENT OF ISSUES................................................................................................... - 15 -

III. STATEMENT OF JURISDICTION.................................................................................... - 16 -

IV. STATEMENT IN SUPPORT OF ORAL ARGUMENT .................................................... - 18 -

V. SUMMARY OF THE ARGUMENT.................................................................................... - 20 -

VI. ARGUMENT....................................................................................................................... - 22 -

VII. CONCLUSION AND PRAYER FOR RELIEF ................................................................ - 26 -

V.III CERTIFICATE OF SERVICE........................................................................................ - 27 -

# TABLE OF AUTHORITIES

## CASES

, *Popovich* v. *Cuyahoga County Court*, 276 F. 3d 808 (CA6 2002)........................................ - 23 -
*Kvko v. Llingly*, 318 F.3d 639 C.A.5 (La.) 2003 ..................................................................... - 17 -
*Virginia, 100 U. S. 339, 346 (1880)*........................................................................................ - 19 -

## C.F.R REGULATIONS

28 C.F.R. â35.107(a)..................................................................................................... - 15 -, - 22 -
42 U. S. C. §12131–§12165 ......................................................................................... - 15 -, - 22 -

## U.S. CONSTITUTIONAL PROVISIONS

U. S. Const. amend. IV ........................................................................................................... - 24 -
U. S. Const. amend. VI ........................................................................................................... - 25 -
U. S. Const. amend. XI ..........................................................................................................passim
U. S. Const. amend. XI. ........................................................................................................... - 23 -
U. S. Const. amend. XIV ..................................................................................... - 19 -, - 24 -, - 25 -

## U.S. SUPREME COURT

*Beazell v. Ohio,* 269 U.S. 167 (1925)....................................................................................... - 3 -
*Cleburne* v. *Cleburne Living Center, Inc.,* 473 U. S. 432, 439 (1985). .............................. - 24 -
*Riley v. California, 573 U.S. 373, 381–85 (2014)* .................................................................. - 25 -
*Riley v. California, 573 U.S. 373, 386 (2014),* ....................................................................... - 26 -
*Tennessee v. Lane, 541 U.S. 509 (2004)* ....................................................... - 4 -, - 6 -, - 10 -, - 12 -
*United States v. Robinson, 414 U.S. 218 (1973),* .................................................................. - 25 -
*UNITED STATES v. TWEEL 550 F.2d 297 (5th Cir. 1977)* ................................................ - 24 -
*Women v. Hogan, 458 U. S. 718, 732 (1982),* ...................................................................... - 19 -
*Wyoming v. Houghton, 526 U.S. 295,(1999)).* ..................................................................... - 25 -

## U.S.C

§12131(1)................................................................................................................................ - 18 -
18 U.S. Code § 1001 .....................................................................................................- 5 -, - 10 -
18 U.S.C § 245 ....................................................................................................................... - 16 -
1999)....................................................................................................................................... - 14 -
28 U.S.C. § 1331 ....................................................................................................... - 16 -, - 17 -
29 U.S.C. §1291 ..................................................................................................................... - 18 -
42 U. S. C. §12132 .................................................................................................- 4 -, - 7 -, - 14 -
42 U. S. C. §12133...................................................................................................................- 18 -
42 U. S. C. §12202 .................................................................................................................. - 19 -
42 U. S. C. §12202 .................................................................................................................. - 19 -
42 U.S. Code § 12203(**b**) ....................................................................................................... - 1 -
42 U.S.C. § 12182 (E)............................................................................................................ - 22 -
*Courtney v. Courtney (1984),* 16 Ohio App. 3d 329 - .......................................................... - 14 -
*Culberson v. Culberson (1978),* 60 Ohio App. 2d 304, ....................................................... - 14 -
*Green (1962),* 369 U.S. 689, 691-692; ................................................................................. - 14 -
Ohio revised code 2931.03 ..................................................................................................... - 20 -
RULE 30 ......................................................................................................................- 1 -, - 13 -
RULE 33 ................................................................................................................................passim
*Trustees of Univ. of Ala. v. Garrett,* 531 U. S. 356. ............................................................. - 7 -
*Tucker v. Tucker* (1983), 10 Ohio App. 3d 251 .................................................................. - 14 -

# U.S. APPEALS COURT

*Lapides v. Board of Regents, 535 U.S. 613 (2002).* ....................................................... - 23 -

*Ala.* v. *Garrett,* 531 U. S. 356 (2001) ....................................................... - 23 -

*Boerne* v. *Flores,* 521 U. S. 507, ....................................................... - 24 -

*Shapiro* v. *Thompson,* 394 U. S. 618, (1969) ....................................................... - 24 -

Skinner v. Oklahoma ex rel. Williamson, 316 U. S. 535, (1942) ....................................................... - 24 -

*Trustees of Univ. of Ala.* v. *Garrett,* 531 U. S. 356. (2001) ....................................................... - 4 -

**United States v. Bland, 458 F.2d 1 (5th Cir. 1972)** ....................................................... - 24 -

**United States v. Rothstein, 530 F.2d 1275 (5th Cir. 1976)** ....................................................... - 24 -

# OHIO RULES OF CRIMINAL PROCEDURE RULE

Ohio court RULE 19 C1 ....................................................... - 1 -

*State v. Mulligan, Montgomery* App. No. C.A. 19359, <u>2003-Ohio-782</u> ....................................................... - 4 -

# LOCAL RULES OF COURT

***Johnson v. City of Cincinnati***, United States Court of Appeals for the Sixth Circuit 310 F.3d 484 (2002) - 22 -

RULE # 2 ....................................................... - 20 -

RULE 30 ....................................................... - 20 -

# FRCP

Civ.R. 53(D)(1) ....................................................... - 2 -

*Mireles v. Waco* 502 US 9, 116 L Ed 2d 9, 14, 112 S Ct 286 (US 1991) ....................................................... - 3 -

*Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683, (1974)* ....................................................... - 2 -

U.S Const **Art 1 § 10.** ....................................................... - 3 -

NOW COMES David Gipson, authorized Representative on behalf of DAVID GIPSON. Ens Legis. in Propria Persona, Sui Juris, and as one of the people of the United States, hereinafter referred to as the real party and interests, and in this court of record in the above-captioned matter, under oath do hereby state and depose. My statement is based on personal firsthand knowledge, and I am competent to do so. I have made this statement in the State of Ohio, in the County of Hamilton.

1. "I respectfully bring to the attention of the appeals court what appears to be an plain error in the magistrate's and Judges decision. Upon careful review of the proceedings, it seems there many discrepancies that warrants further consideration and clarification." Such as application of the correct local RULES in effect see exhibit 1901and defendants microrotation of RULE 33 in place of RULE 30.

## I. STATEMENT OF THE CASE

2. On January 15 2021, I, David Gipson  was in my Propria Persona, Sui Juris helping Mr. Sullivan under 42 U.S. Code § 12203(**b**) **INTERFERENCE, COERCION, OR INTIMIDATION** It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter. Both myself and Mr.  Sullivan. had an appointment to see Roger I.T. tech and Andy Gillin.

3. Mr. Ruehlman was in Propria Persona acting under the "color of Law and the color of office", as the court was not activated under the RULE of the Ohio court RULE 19 C1, and no charging instrument was presented to Mr. Gipson. Mr. Ruehlman lacked authority acting in the "clear absence of all jurisdictions."

**Crim R 19 (C) 1 (c) that requires Crim R. 11**

(i) In misdemeanor cases, accept and enter guilty and no contest pleas, determine guilt or innocence, receive statements in explanation and in

mitigation of sentence and recommend a penalty    to be imposed. If imprisonment is a possible penalty for the offense    charged, **the matter may be referred only with the unanimous consent of the parties**, in writing or on the record in open court. **The defendants did not get** unanimous <u>consent of the parties, in writing</u> or by anyone attorney trustee or other from Mr. Gipson or Mr. Sullivan  This was not done.

4.    Under RULE R 19 (D) (8) a Contempt in the presence of a magistrate (a) Contempt order Contempt sanctions under Crim. R. 19 (C)(2)(e) may be imposed "<u>only by a written order" that recites the facts</u> and certifies that the magistrate saw or heard the conduct constituting contempt.  (b) Filing and provision of copies of contempt order.  A contempt order shall be filed, and copies provided forthwith by the clerk to the appropriate judge of the court and to the subject of the order.(c) Review of contempt order by court; bail the subject of a contempt order may by motion obtain immediate review by a judge.  A judge or the magistrate entering the contempt order may set bail pending judicial review of the order. "Mr. Ruehlman has not completed his contempt order" Mr. Ruehlman said contempt as the procedure was not under reference under Civ.R. 53(D)(1), Lubbers: Nestor, Heekin, only can assist courts of record "not as offsite individuals in personal capacity or hallway individuals in personal capacity", To assist courts pursuant to magistrates that are authorized under reference M9600400 (emphasis added).

5.    The court held in *Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683, 1687 (1974) Note:* By law, a judge is a state officer. The judge then acts not as a judge, but as a private individual (in his person). When a judge acts as a trespasser of the law, when a judge does not follow the law, the Judge loses subject-matter jurisdiction and the judges' orders are not voidable, but VOID, and The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." Mr. Ruehlman held exculpatory evidence for over a year. Magistrate plain error see Lisa BRACKMAN letter Doc #: 33-4 Filed:

06/26/23 PAGEID #: 1421 no said RULE was in place on 01/15/21.

6.   Ms. Hayslip stated in her **DECLARATION exhibit G** Any and all actions taken by me were at the direction or on behalf of Judge Robert Ruhlmann. Ms. Hayslip committed a fraud on the court and did record the proceedings. A motion had been filed for the Ruehlman charging instruments by sheriffs and Brogan, However Ms. Hayslip collaborated in destruction of evidence. 1:22-cv-00764-MRE3-KLL Doc #: 33-13 Filed: 06/26/23 PAGEID #: 1806

[1:16:37] DEPUTY SPEERS: Yes. [inaudible] because we don't have evidence for Gipson  [inaudible]. They had it disappear.

[1:16:40] [BAILIFF HAYSLIP What the hell? [inaudible].

[1:16:58]  DEPUTY SPEERS: Whatever. I don't care about this [inaudible].

[1:17: 32]  BAILIFF HAYSLIP: Yeah, and then, what do you do with all these statements for Mr. Sullivan?

[1:17: 34]  LIEUTENANT: BROGAN:  What I'll do with all the documents [inaudible]? Mr. Ruehlman *acting under the color of law, Judicial immunity is overcome in only two sets of circumstances. See Mireles v. Waco 502 US 9, 116 L Ed 2d 9, 14, 112 S Ct 286 (US 1991)* First, a judge is not immune from liability for nonjudicial actions, i.e., administrative actions not in proper venue, or actions not taken in the judge's judicial capacity. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdictions. Such as RULE changes to 30 and 33 not presented before the joint session. The record shows Ruehlman changing said RULES with CPL. NICK HRNYAK after the preceding were over. The record shows in violation of U.S Const **Art 1 § 10.** This prohibits the states from passing any laws which apply ex post facto. What Constitutes Punishment In *Beazell v. Ohio, 269 U.S. 167 (1925)* the Supreme Court defined the scope of the constitutional ex post facto through the following

restrictions: "It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto." see **exhibits 1901 1902 1903** the magistrates plain error *State v. Mulligan, Montgomery* App. No. C.A. 19359, <u>2003-Ohio-782</u> -- Double booking trials in state and federal court without adequate advance notice to the common pleas court. **The judge** Ruhlmann **manner of proceeding as both prosecutor and judge at the contempt** hearing denied any attorney due process, namely the right to an impartial and unbiased judge.

7.    DEPUTY MADISON SPEER committed a fraud on the court and does not enjoy immunity under *Tennessee v. Lane, 541 U.S. 509 (2004)* Title II [1]of the Americans with Disabilities Act of 1990 (ADA), which provides: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation or denied the benefits of the services, programs or activities of a public entity," 42 U. S. C. §12132. The court held, After the District Court denied the State's motion to dismiss on U. S. Const. amend. XI immunity grounds, the Sixth Circuit held the appeal in abeyance pending *Board of Trustees of Univ. of Ala.* v. *Garrett,* 531 U. S. 356. (2001).  This Court later ruled in *Garrett* that the U. S. Const. amend. XI  bars private money damages actions for state violations of ADA Title I, which prohibits employment discrimination against the disabled. The en banc Sixth Circuit then issued its *Popovich* decision, in which it interpreted *Garrett* to bar private ADA suits against States based on equal protection principles, but not those relying on **due process,** (emphasis added) and

---

[1] *Tennessee v. Lane, 541 U.S. 509 (2004)*

therefore permitted a Title II damages action to proceed despite the State's immunity claim. DEPUTY SPEERS violation of 18 U.S. Code § 1001 - Statements or entries generally on January 15 2021 and in her statement she affirms under penalties of perjury that the foregoing statements are true and correct. The following is the (Dryer Hayslip recording after Mr. Sullivan and Gipson entered the court. see exhibit 1281.1281a

 [4:20] DEPUTY: SPEERS: I'll be back.

DEPUTY: SPEERS: Excuse me, sir. Are you just recording us?

DEPUTY: SPEERS: do you mind if I see your phone

Mr. Gipson: I do mind, No.

DEPUTY: SPEERS: Okay. So we actually have a RULE that's in place that you    cannot record in this courthouse anymore. Are you aware of that?

Mr. Gipson: I'm not aware of that.

DEPUTY: SPEERS: Have you been told about that? (Addressing Mr. Sullivan)

Mr. Sullivan: Who said that? Is that...

DEPUTY: SPEERS: That's our new county's RULE.

Mr. Sullivan: And what county commissioner said that?

DEPUTY: SPEERS: It's by the judges.

Mr. Sullivan: By the judges?

DEPUTY: SPEERS: Yes.

Mr. Sullivan: And their jurisdiction is within the court?

DEPUTY: SPEERS: Yes.

Mr. Sullivan: Rooms themselves?

DEPUTY: SPEERS: No, within the courthouse.

Mr. Sullivan: And that's 33 and 3 and two jurisdictions.

DEPUTY: SPEERS: No, it's 30.

Mr. Sullivan: Can we see? Can we see it?

[5:06] DEPUTY: SPEERS: Absolutely. Go to our office and we'll make sure there are two copies for you guys.

8. **DEPUTY: SPEERS:** Point 10 does not match what she stated in the hallway.

9. DEPUTY: SPEERS: Point 14 does not match what she stated in the hallway. Mr. Sullivan went through the metal detector second with little problem. DEPUTY SPEERS: In hearing at [49:22] states, yes, judge. When I attempted to ask him if he would show me his phone, he refused. Mr. Sullivan stepped over and started yelling at me, getting very close, not socially distancing.

10.    DEPUTY: SPEERS: Point 16 does not match what she stated in the hallway. attempted to inform Mr. Gipson of the recent changes made to Local R. 33 which forbid unauthorized  recordings in the Courthouse at which point Mr. Sullivan intervened. "SPEERS: addressed Sullivan first". DEPUTY SPEERS: true statement  in the Hallway.

[4:56] Mr. Sullivan: And that's 33 and 3 and two jurisdictions.

[5:01] DEPUTY: SPEERS: No, it's 30.

[5:03] Mr. Sullivan: Can we see? Can we see it?

[5:06] DEPUTY: SPEERS: Absolutely. Go to our office and we'll make sure there are two copies for you guys.

11.    DEPUTY: SPEERS: Point 23 At that point I returned to my post at the metal detector and Lt. Brogan, Sgt. Dreyer and Cpl. Hrnyak took Mr. Sullivan and Mr. Gipson to find a judge to explain the changes to Local R. 33. Mr. Sullivan and Mr. Gipson had to give up a right to use court services see exhibit 1281. 1:22-cv-00764-MRB-KLL Doc #: 33-13 Filed: 06/26/23PAGEID #: 1773.

12.DECLARATION OF CPL. NICK HRNYAK committed a fraud on the court and does not enjoy immunity under *Tennessee v. Lane, 541 U.S. 509 (2004)* Title II of the Americans with Disabilities Act of 1990 (ADA), which provides: "No qualified individual with a disability shall, by reason of such disability, be

excluded from participation or denied the benefits of the services, programs or activities of a public entity," 42 U. S. C. §12132. After the District Court denied the State's motion to dismiss on U. S. Const. amend. XI immunity grounds, the Sixth Circuit held the appeal in abeyance pending Board of Trustees of Univ. of Ala. v. Garrett, 531 U. S. 356. This Court later ruled in Garrett that the Eleventh Amendment bars private money damages actions for state violations of ADA Title I, which prohibits employment discrimination against the disabled.

13. DECLARATION OF CPL. NICK HRNYAK statement point 12 does not match what is on the court record his statement is arbitrary and capricious. He stated Prior to January 15, 2021 the Hamilton County Court of Common Pleas amended local RULE 33 to expressly forbid recording in the courthouse without permission. HRNYAK asks Ruehlman at [53 43] CORPORAL: NICK HRNRYAK: "I' don't know if a court order will get it. Or we have to write a search warrant." Said order was never produced.

14. DECLARATION OF CPL. NICK HRNYAK I was the first supervisor to arrive at the security checkpoint, and I spoke with both Mr. Sullivan and Mr. Gipson regarding recording in the Courthouse.

15. DECLARATION OF CPL. NICK HRNYAK, Point 17 exhibit H    I attempted to explain to them that Local RULE 33 had recently been amended to expressly forbid unauthorized recording taking place inside the Courthouse.

16.  DECLARATION OF CPL. NICK HRNYAK, Point 17 exhibit H    When Mr. Gipson denied taking a video recording I requested to see the phone, which Mr. Gipson and Mr. Sullivan denied. CPL. NICK HRNYAK, never spoke to Mr. Gipson only Sullivan.

[6:50]    DEPUTY Hrnyak; I need to see your phone you are obviously in violation of our new policy the policy has been updated.

- 7 -

[7:00]   Mr. Sullivan is that policy a law?
[7:06]   DEPUTY: Hrnyak It's a courthouse policy
[7:12]   Mr. Sullivan: She said she said we going to see Lieutenant Brogan
[7:13]   DEPUTY: Hrnyak I need to see your phone if you recorded
          anything
[7:14]   Mr. Gipson: Your not seeing my phone
[7:20]   DEPUTY: Hrnyak We can take you up in front of the presiding
          Judge
[7:26]   Mr. SULLIVAN: That's Heather, That's Heather we know her
[7:27]   DEPUTY: No it's not Heather
[7:33]   DEPUTY: Hrnyak: I'll give you the short version
[7:35]   Mr. Sullivan: I just want to know what the law is
[7:36]   DEPUTY: Hrnyak: This is the new policy
[7:39]   Mr. Sullivan: Policy is not a law
[7:41]   Mr. Sullivan: What is your name
[7:43]   DEPUTY: Hrnyak: Corpral Nick Hrnyak
[7:45]   Mr. Sullivan What is your badge number
[7:46]   DEPUTY: Hrnyak: 1126
[7:47]   DEPUTY: Hrnyak: The short version is
[7:55]   Mr. Sullivan of your policy not a law just make that statement clear
[7:58]   DEPUTY: Hrnyak: you can no longer
[7:59]   Mr. Sullivan: who telling you to do this
[8:00]   DEPUTY: Hrnyak: This is per the common pleas Judges
[8:04]   Mr. Sullivan: Which judge is that
[8:06]   DEPUTY: Hrnyak: The pre-whoever is the presiding judge. I
          think it's Luebbers, the one who decided that.
[8:08]   Mr. Sullivan: Is Luebbers the new presiding judge kilbicki was the
          old one
[8:11]   DEPUTY: Hrnyak: yes
[8:13]   Mr. Sullivan: so your telling me Luebbers is telling you to do this
[8:16]   DEPUTY: Hrnyak: I'm not here to stand and argue with you.
[8:17]   Mr. Sullivan: I am not arguing  I am asking
[8:22]   DEPUTY: Hrnyak: You're not letting me talk. So I let you speak.
          You can let me talk or you can leave. Okay?
[8:23]   Mr. Sullivan: What's going on with these guys?
[8:26]   DEPUTY: Hrnyak: They're just down here because you're acting,
          you're acting a fool of yourself.
[8:29]   Mr. Sullivan: Ober. Roy.
[8:30]   DEPUTY: Hrnyak: Are you guys going to leave? Okay, so let me
          explain to you

[8:32]   Mr. Sullivan: hey hey hi crosstalk Ober Roy ]
[8:38]   Sargent the new policy is
[8:41]   Mr. Sullivan: I'm asking these guys.
[8:42]   if you're going to...
[8:43]   LIEUTENANT: BROGAN: lower you voice
[8:44]   DEPUTY: Hrnyak:  Excuse me, boss.
[8:45]   Mr. Sullivan: I wanted to say hi to all the guys
[8:47]   LIEUTENANT: BROGAN: here we go...
[8:50]   CORPORAL: NICK HRNRYAK: ok So we have a Lieutenant and a
         Sargent. Come on James.

17.    DECLARATION OF CPL. NICK HRNYAK, point 21 exhibit H statement
does not match what is on the court record Mr. Sullivan did not believe our
explanation of the changes to Local RULE 33 Lt. Brogan went to his office and printed
a copy of the rule and provided it to Mr. Sullivan.

18. DECLARATION OF CPL. NICK HRNYAK point 22 exhibit H Once provided
with a copy of RULE 33, Mr. Sullivan still did not believe the rule's validity, so Lt.
Brogan offered to have a Judge explain the rule to both Mr. Sullivan and Mr.
Gipson.

CPL. NICK HRNYAK, never spoke of  RULE 33, see recording

19. DECLARATION OF CPL. NICK HRNYAK point 23 exhibit H we walked Mr.
Sullivan and Mr. Gipson throughout the courthouse in search of a Judge to explain
the changes made to Local RULE 33. CPL. NICK HRNYAK, never spoke RULE
3 and

his statements prove no said RULE was in effect see recording 1281.

[53:34] CORPORAL: NICK HRNRYAK: I'll reach out I don't know what
can   be done as far as.
[53 36] JUDGE RUEHLMAN: don't you want to take down to forensics.
Guy right now.
[53 37] BAILIFF CHRISTOPHER COLINI: So, you guys want to hold.
[53 43] CORPORAL: NICK HRNRYAK: I' don't know if a court order will
get it. Or we have to write a search warrant.
[53 47] BAILIFF HAYSLIP: Well, if write a search warrant we can sign it.

[53 48] CORPORAL: NICK HRNRYAK: well, I know that at minimum we got to get a search warrant. I don't know if we can take care of that.
[53 53] BAILIFF HAYSLIP: Okay. Do what you guys got to do.
[53 56] CORPORAL: NICK HRNRYAK: I don't know if we can take care of that
[53 58] JUDGE RUEHLMAN: Okay I'll sign a search warrant anytime. I'll be at home today if you want to bring it by I'll sign it.

20.    DECLARATION OF SGT. MICHAEL DREYER committed a fraud on the court and does not enjoy immunity under *Tennessee v. Lane, 541 U.S. 509 (2004) Title II of the Americans with Disabilities Act of 1990 (ADA),* violation of 18 U.S. Code § 1001 SGT. MICHAEL DRYER Statements or entries generally on January 15 2021 and in his statement he affirms under penalties of perjury that the foregoing statements are true and correct.

21. SGT. MICHAEL DREYER Statements point 21 exhibit E statement does not match what is on the court record Lt. Brogan and I attempted to explain to them that Local RULE 33 had recently been amended to forbid unauthorized recording taking place inside the Courthouse.  SGT. MICHAEL DREYER never spoke of RULE 33, see recording exhibit 1281.

22.    SGT. MICHAEL DREYER Statements point 22 exhibit E statement does not match what is on the court record Mr. Sullivan did not believe our explanation of the changes to Local RULE 33 so Lt. Brogan went to his office and printed a copy of the rule and provided it to Mr. Sullivan. SGT. MICHAEL DREYER never spoke of RULE 33, see recording. exhibit 1281.

23. SGT. MICHAEL DREYER Statements point 23 exhibit E statement does not match what is on the court record Once provided with a copy of RULE 33, Mr. Sullivan still did not believe us so we offered to take them to a Common Pleas Court Judge to explain the RULE change to both Mr. Sullivan and Mr. Gipson.  SGT. MICHAEL DREYER never spoke of RULE 33,  see recording exhibit 1281.

24.    SGT. MICHAEL DREYER Statements point 24 exhibit E statement does not

match what is on the court record. We walked Mr. Sullivan and Mr. Gipson throughout the courthouse in search of a Judge to explain the changes made to Local RULE 33.

25.    SGT. MICHAEL DREYER Statements point 25 exhibit E statement does not match what is on the court record Mr. Sullivan and Mr. Gipson accompanied us voluntarily and at no time were they handcuffed, arrested, detained or in custody. Both Mr. Sullivan and Mr. Gipson were free to leave at any point.

26.    SGT. MICHAEL DREYER Statements point 26 exhibit E statement does not match what is on the court record At times while escorting Mr. Sullivan and Mr. Gipson around the courthouse Lt. Brogan and I had to s1ow down and wait for Mr. Sullivan. who was walking slowly due his medical conditions.

27.    SGT. MICHAEL DREYER Statements point 28 exhibit E statement does not match what is on the court record We next took Mr. Sullivan and Gipson to the courtroom of Judge Tom Heekin who told us to take them to Judge Robert Ruehlman's courtroom for an explanation of Local RULE 33. SGT. MICHAEL DREYER never spoke of RULE 33,  see recording exhibit 1281. SGT. MICHAEL DREYER Statements point 29 does not match what is on the court record Once we arrived in Judge Ruehlman's Courtroom we waited for the Judge to take the bench to ex Courtroom, change to Local RULE 33,. SGT. MICHAEL DREYER Statements point 30 statements does not match what is on the court record While waiting for the judge, Mr. Sullivan and I got into a brief but heated verbal exchange. During this heated discussion.

28.    SGT. MICHAEL DREYER Statements point 31 exhibit E statements does not match what is on the court record both Mr. Sullivan and I both raised our voices. This is a false statement by SGT. MICHAEL DREYER  see recording.

29.    SGT. MICHAEL DREYER Statements point 32 exhibit E statements does not match what is on the court record At no time prior to the Judge taking the bench did I arrest or detain Mr. Sullivan. Mr. Sullivan was blocked by Hrnyak and Ober from

getting bail money.

30.     DECLARATION OF LIEUTENANT DENNIS BROGAN does not enjoy immunity under *Tennessee v. Lane, 541 U.S. 509 (2004)* Title II. Statements point 18 exhibit D statements does not match what **is on the court record** I attempted to explain to them **that Local** RULE 33, had recently been amended to expressly forbid unauthorized recording inside the Courthouse.

31.     DECLARATION OF LIEUTENANT DENNIS BROGAN Statements point 19 exhibit D statements do not match what is on the court record.

32.     DECLARATION OF LIEUTENANT. DENNIS BROGAN Statements point 20 exhibit D statements do not match what is on the court record Once provided with a copy of RULE 33, Mr. Sullivan still was not satisfied that recording in the courthouse was not permitted. I offered to have a Judge explain the RULE to both Mr. Sullivan and Mr. Gipson.

33.     DECLARATION OF LT. DENNIS BROGAN Statements point 21 exhibit D statements does not match what is on the court record, I along with Sgt. Dryer and Cpl. Hrnyak accompanied Mr. Sullivan and Mr. Gipson throughout the courthouse in search of a Judge to explain the changes made to Local RULE 33.

34. DECLARATION OF LIEUTENANT DENNIS BROGAN Statements point 22 exhibit D statements does not match what is on the court record, Mr. Sullivan and Mr. Gipson accompanied us voluntarily in search of a Common Pleas judge, they were not being detained nor did we consider them in custody. Both were free to leave the Courthouse at that point. However, if they elected to remain in the Courthouse that election was dependent on our being able to access their phones to confirm that they were not recording in the Courthouse. They would not allow us access to their phones.

35. DECLARATION OF LIEUTENANT DENNIS BROGAN Statements point 25

exhibit D statements does not match what is on the court record, we next took Mr. Sullivan and Mr. Gipson to the courtroom of Judge Tom Heekin who told us to take them to Judge Robert Ruehlman's courtroom for an explanation of Local RULE 33, as Judge Heekin was leaving the courthouse for the day.

36.     DECLARATION OF LIEUTENANT  BROGAN Statements point 26 exhibit D   statements does not match what is on the court record, once we arrived in Judge Ruehlman's Courtroom, we waited for the Judge to take the bench to explain the change to Local RULE 33. LT. DENNIS BROGAN stated to Judge RUEHLMAN:

37.     DECLARATION OF LIEUTENANT DENNIS BROGAN Statements point 27 exhibit D statements does not match what is on the court record. While waiting Mr. Sullivan and Sgt. Dryer got into a brief but heated verbal exchange.

38.     [26:05] SARGENT: DRYER: [Yells] you're not supposed to pass the bar Mr. Sullivan, have a seat
    [26:14] Mr. Sullivan: What bar, what bar?
    [26:23] SARGENT: DRYER: right here.
    [43:29] BAILIFF HAYSLIP:  All rise. The County Court of common pleas

39.  DECLARATION OF LT. DENNIS BROGAN Statements point 28 exhibit D statements does not. Match what is on the court record Shortly thereafter the Judge took the bench and held a contempt of court hearing.

40.     DENNIS BROGAN for approximately 14:00 minutes with SPEERS DRYER: HAYSLIP, HRNYAK, COLINI in the Judges chambers in an exparte meeting. The record shows.  BROGAN claimed to have an order this have never been produced "only Dryers unsigned RULE 30 rolled up paper".

[51:49] JUDGE RUEHLMAN: Did you show you showed him a "order?"
[51:51] LIEUTENANT: BROGAN: Yeah, He thinks that I drew this whole
        RULE          up the  whole RULE or showed.
[51:56] Mr. Sullivan: Objection. All I said was I'd like to see it signed. That's all

I   said.

[52:20] JUDGE RUEHLMAN: He disrupted, I could hear him in my office screaming, yelling at you. So that's three days for doing that.

*Hansen v. Hansen* (1999), 132 Ohio App. 3d 795 -- Absent a RULE, statute, or settled practice permitting service upon counsel of notice of indirect civil contempt proceedings, due process requires an effort to directly serve the party. Also see the court held in *Midland Steel Products Co. v. U.A.W. Local 486 (1991), 61 Ohio St. 3d 121* -- Paragraph two of the syllabus: "In cases of criminal, indirect contempt, it must be shown that the alleged contemnor intended to defy the court." Mr. Gipson and Mr. Sullivan are still waiting for the charging instrument Ruehlman stated it was a trial  in progress.  The court held in *Courtney v. Courtney (1984), 16 Ohio App. 3d 329* -- (1) Due process requires that one charged with contempt be advised of the charges against him, have a reasonable opportunity to answer those charges by way of defense or explanation, have the right to be represented by counsel and have the chance to both testify and call witnesses. See In re *Oliver (1948), 333 U.S. 257, 275; In re Green (1962), 369 U.S. 689, 691-692; Culberson v. Culberson (1978), 60 Ohio App. 2d 304, 306.Tucker v. Tucker* (1983), 10 Ohio App. 3d 251 -- Sanction for civil contempt must include an opportunity for contemnor to purge himself of contempt.

41.   From [4:26] to [43:29] was more than enough time to apply for a RULE 33, application through the court administration at [15:42] Mr. Sullivan: He is the clerk we can go to 375, he has to sign it is public record, Brogan. You can't just make up your rules anymore. Brogan is a made-up RULE. **Lieutenant** DENNIS BROGAN Blocked myself and Mr. Sullivan by keeping  myself in detention and blocking access by deception  to court services in violation of the ADA 1990 42 U. S. C. §12132.

42. DECLARATION OF DEPUTY FREDERICK OBER DECLARATION OF

SGT. FREDERICK OBER committed a fraud on the court and does not enjoy immunity under *Tennessee v. Lane, 541 U.S. 509 (2004)* Title II of the Americans with Disabilities Act of 1990 (ADA), To the best of my knowledge, my first contact with Mr. Sullivan and Mr. Gipson was when they were in the Courtroom of Judge Robert Ruehlman. DEPUTY FREDERICK OBER was behind Mr. Sullivan with deputy Hrnyak from the coffee shop until Ruehlman sham court/ LIEUTENANT: BROGAN: and other deputies knew of the Go- Pro I also know it has to be yellow or Red to be recording. DEPUTY FREDERICK OBER statement of the January 15, 2020 Encounter with James Sullivan Dave Gipson is false

43. DEPUTY FREDERICK OBER started questing Mr. Sullivan who was not a subject of Deputy Speers questions in good faith Mr. Sullivan only agreed to go to the presiding judge Luebbers for application of "New RULE 33". I Mr. Gipson did not agree to anything. Hamilton County did not have anyone for ADA related matters, as required by 28 C.F.R. â35.107(a) if it is not you. Brogan: Speers, Hrnyak did confirm in open court it was RULE 30 not RULE 33 see below. All of their statements are fraud on the Court.

[51:36] CORPORAL: NICK HRNRYAK I could also add and I talked to him, I mean, like, we tried to show him. Court RULE 33,

[51:44] LIEUTENANT: BROGAN I mean, like, we tried to show him. Court RULE 30 He thinks that I drew this up and at

[5:01] DEPUTY: SPEERS: No, it's 30.

## II. STATEMENT OF ISSUES

44. The defendant claim for immunity has been abrogated by Title II of the Americans with Disabilities Act of 1990 (ADA), 104 Stat. 337, 42 U. S. C. §12131– §12165,

45. These records have not been procurable through a public records request to

- 15 -

the ADA compliance officer in Hamilton County, HR Director or Patrick has not produced anything "So, the records requested on the subpoena that David Gipson is referring to.

46. ROBERT RUEHLMAN citation of did not have authority to make determinations as to whether or not anyone has a disability; and, Any and all authoritative evidence that ROBERT RUEHLMAN was without a duty to comply with the Americans with Disabilities title II Act; and, Any and all citation, RULE of court or memoranda of any authority that empowers ROBERT RUEHLMAN to diagnose whether or not a disability exists with a litigant; and, The transcript of each hearing in the above captioned matter (Already asked for in video/audio records above, and,

47. Records have not been procurable of the Court's written policies on 01/15/21 pertaining to responding to disability accommodations.

48. Records have not been procurable of, certifications, or other documentation that proves that ROBERT RUEHLMAN has been trained in how to administratively comply with the ADA.

49.There may be more requests for reasonable modification, and this is not a waiver of rights.

50. All previous issues filed with the court are incorporated by reference here in.

### III. STATEMENT OF JURISDICTION

**District Court's Jurisdiction The district court had subject matter jurisdiction over this matter pursuant to:** 28 U.S.C. § 1331 which grants the district courts "original jurisdiction of all civil actions arising under the laws of the United States." Plaintiff s suit against the defendants was based upon 42 U.S.C. § 1983 and 18 U.S.C § 245 United States law requires that those who deprive any person of rights and privileges protected by the Constitution of the United States provided by statute law be liable in action at law, suit in equity. or other appropriate

measure. 42 U.S.C. §1983 U.S.C § 245 A private party may be liable under 42
U,S.C. § 1983 for conspiring with state actors to deprive a citizen of their civil
rights. *Kvko v. Llingly, 318 F.3d 639 C.A.5 (La.) 2003* In the instant matter,
Plaintiff, David Gipson , is a United States National and resident of Milford, Ohio.
he is entitled to relief sustained as a result of the trespass and trespass on the case
of, Relief including attorneys' fees, costs, expenses and psychological and
emotional distress experienced as a result of the long-endured battle for' a hearing.
Defendants, engaged in unlawful behavior, including but not limited to, making
false public accusations of local court RULE violations, conspiring to entrap,
falsely imprison, un1awfully arrest, harass and deprive Mr. Gipson of his liberty.
Specifically, JODY LUEBBERS, acting as an offsite clerk, assignment
commissioner and Prosecutor. TERRY NESTOR: acting as an onsite, clerk,
assignment commissioner, THOMAS HEEKIN: acting as an onsite, clerk,
assignment commissioner, Ohio Supreme Court Justis and Prosecutor. ROBERT
RUEHLMAN: acting as a Prosecutor. Attorney, investigator, and I.T. aid for Dale
Mikes. SGT. MICHEAL DRYER acting as a clerk, assignment commissioner,
Judge, investigator, LIEUTENANT DENNIS BROGAN. acting as a clerk,
assignment commissioner, investigator, janitor, DEPUTY HNRYAK, acting as a
clerk, assignment commissioner, investigator, Joint commission, I,T. aid for Dale
Mikes and ROBERT RUEHLMAN. DEPUTY SPEERS acting as a clerk, Deputy,
investigator, Laura HAYSLIP acting as a clerk unauthorized BAILIFF, Judge,
Prosecutor, Not recognized by Hamilton County. Defendants, all were employed
by an Ohio political subdivision known as Hamilton County at all relevant times,
Federal jurisdiction over pendant states claims is governed by 28 U.S.C. § 1331,
which states: "The district courts shall have original jurisdiction of all civil actions
arising under the Constitution, laws, or treaties of the United States.

**55.    Court of Appeal's Jurisdiction**

This Court has jurisdiction over this appeal pursuant to 29 U.S.C. §1291 shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the judgment below is a final judgment of the United States District Court. RE Doc #: 34 PAGEID #: 1839 -1842

56.    Final Judgment

The judicial defendants' motion to dismiss, (Doc. 11), is GRANTED; and Gipson's motion for injunctive relief, (Doc. 23), is DENIED.

## IV. STATEMENT IN SUPPORT OF ORAL ARGUMENT

**57**. Petitioner filed for injunctive relief for ADA enforcement Magistrates clear error Doc #: 2 PAGEID #: 31. It is undisputed that defendants 1. Plaintiff had a clearly established exhibit 1203 and 1203a Constitutional Right. This was established on two separate occasions the 1st being June 5th, 2020 exhibit 1203 and 1203a and the second being December 23, 2020, exhibit 1270 is a recording about the ADA Title II  December 23, 2020, exhibit 1271 is a picture of myself with Lieutenant BROGAN in a public area. With Mr. Sullivan.

58. The Act defines the term "public entity" to include state and local governments, as well as their agencies and instrumentalities. §12131(1). Persons with disabilities are "qualified" if they, "with or without reasonable modifications to RULES, policies, or practices,

59. Title II's enforcement provision incorporates by reference §505 of the Rehabilitation Act of 1973, 92 Stat. 2982, as added, 29 U. S. C. §794a, which authorizes private citizens to bring suits for money damages. 42 U. S. C. §12133.III.

60. 528 U. S. 62, 72–73 (2000). Our cases have also held that Congress may abrogate the State's U. S. Const. amend. XI immunity. To determine whether it has done so in any given case,

61. STANDARD OF REVIEW we "must resolve two predicate questions: first, whether Congress unequivocally expressed its intent to abrogate that immunity; and second, if it did, whether Congress acted pursuant to a valid grant of constitutional authority."

73. The first question is easily answered in this case. The Act specifically provides: "A State shall not be immune under the U. S. Const. amend. XI to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U. S. C. §12202. As in Garrett, see 531 U. S., at 363–364, (2001) no party disputes the adequacy of that expression of Congress' intent to abrogate the States' Eleventh Amendment immunity.

74. The Second question is then, is whether Congress had the power to give effect to its intent. In *Fitzpatrick v. Bitzer, 427 U. S. 445 (1976),* the court  held that Congress can abrogate a State's sovereign immunity when it does so pursuant to a valid exercise of its power under §5 of the U. S. Const. amend. XIV to enforce the substantive guarantees of that Amendment. Id., at 456. This enforcement power, as the court has  often acknowledged, is a "broad power indeed." Mississippi Univ. for *Women v. Hogan, 458 U. S. 718, 732 (1982),* citing Ex parte *Virginia, 100 U. S. 339, 346 (1880).*[Footnote 3] It includes "the authority both to remedy and to deter violation of rights guaranteed [by the U. S. Const. amend. XIV] by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text."

75. Therefore Mr. Gipson does have a protected right to walk through a public hall and use the public Delli and court services under ADA title II 42 U. S. C. §12202. the Court's opinion noted that the "overwhelming majority" of that evidence related to "the provision of public services and public accommodations, which areas are addressed in Titles II and III," All exhibits are incorporated by reference, affidavit recording transcripts statements of compliance officer missing RULE

change.                         V. SUMMARY OF THE ARGUMENT

**76.   Under** ADMINISTRATIVE PROCEDURE ACT [PUBLIC LAW 404—79TH CONGRESS] [CHAPTER 324—2D SESSION] [S. 7] **this court has the authority of** JUDICIAL REVIEW SEC. 10. To review any and all of the following.   (a) RIGHT OF REVIEW.—Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof. "Ruehlmann proceeded in the absents of all jurisdiction."

   (1) Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law*; both deputy Speers and Ruehlmann stated on the record this in fact was a new* RULE *Speers(30) and Ruehlmann (undefined )*Magistrate plain erro*r*

   (2) Contrary to constitutional right, power, privilege, or immunity; Mr. Gipson did make it clear he wanted all his constitutional Right's    )Magistrate plain error

   (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; Mr. Sullivan did inform Ruehlmann at [44:52] Mr. Sullivan: They said they would bring us to the presiding Judge that, what these officers said. Under Ohio revised code 2931.03 cases of minor offenses the exclusive jurisdiction of which is vested in courts inferior to the court of common pleas. However under RULE 30 see exhibit 1901 Ruehlmann had duty to issue a license. )Magistrate plain error.

77.   Mr. Gipson had no plans to go into a courtroom however the arbitrary, capricious, of Hamilton County changed at any time and court services were blocked. One minute and thirty seconds after passing security.*Magistrate plain error* 1:22-cv-00764-MRB-KLL Doc #: 33-12 Filed: 06/26/23 PAGEID #: 1666 Magistrate plain error.

   RULE 3. Presiding Judge, Assistant and Second Assistant Presiding Judges, and Secretary. Have failed to file any required papers under the ADMINISTRATIVE PROCEDURE ACT or their own local court RULES such as RULE # 2 Magistrate plain error.

RULE 30. Media coverage of Court proceedings

(A) Requests for permission to broadcast, televise, photograph, or otherwise record proceedings: in the courtroom shall be made in writing to the Judge or the Judge's designated courtroom employee. Such a request shall be made on the appropriate application form available through the Court Administrator. Such applications should be made as far in advance as is reasonably possible but in no event later than 30 minutes prior to the courtroom session to be recorded. The Judge involved may waive the advance notice provision for good cause. All applications shall become part of the record of the proceedings.

78. The court without observance of procedure required by law; Mr. Gipson: did state I want all my rights. No, I do not want to surrender any of my rights, sir. Case: 1:22-cv-00764-MRB-KLL Doc #: 33-13 Filed: 06/26/23 Page: - 21 - of 31 PAGEID #: - 21 -

(c) REVIEWABLE ACTS. Are as follows Every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review. Any preliminary, procedural, or intermediate agency action or ruling not directly reviewable shall be subject to review upon the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final shall be final for the purposes of this subsection whether or not there has been presented or determined any application for a declaratory order, for any form of reconsideration, or (unless the agency otherwise requires by RULE and provides that the action meanwhile shall be inoperative) for an appeal to superior agency authority. Magistrate plain error

(d) INTERIM RELIEF. Such as an injunction Pending judicial review any agency is authorized, where it finds that justice so requires, to postpone the effective date of any action taken by it. Upon such conditions as may be required and to the extent necessary to prevent irreparable injury, every reviewing court (including every court to which a case may be taken on appeal from or upon application for certiorari or other writ to a reviewing court) is authorized to issue all necessary and appropriate process to postpone the effective date of any agency action or to preserve status or rights pending conclusion of the review proceedings.

(e) SCOPE OF REVIEW.—So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. The right to walk through a hallway to use court services is clearly settled law *Johnson v. City of Cincinnati*, United States Court of Appeals for the Sixth Circuit 310 F.3d 484 (2002) also see 42 U.S.C. § 12182  (E) - Prohibition of discrimination by public accommodations

**(E) Association** It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association. VI. ARGUMENT

**79.**  The access to court services is a basic fundamental right and  Myself and Mr. Sullivan were blocked many times. Mr. Sullivan and  I did try to contact a responsible employee for ADA related matters, as required by 28 C.F.R. â35.107(a) the only people available were Lieutenant Brogan and Patrick Dressing, however neither had any training for ADA access and neither complied with the ADA title II.

**80**.  All Defendants did have a mindset of judicial or qualified immunity. Title II of the Americans with Disabilities Act of 1990 (ADA or Act), 104 Stat. 337, 42 U. S. C. §12131–§12165, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." Mr. Sullivan did provide a doctor's note for Lieutenant Brogan and Patrick Dressing in a good faith effort for compliance , see exhibit 1203 06/05/20  BROGAN TALK MED COND. Magistrate plain error.

81.  Mr. Gipson and Sullivan have not been able to gain access to a number of

county courthouses building and, as a result both lost an opportunity to participate in the judicial process.

82. The Sheriffs and the offsite Judges and one onsite Judges through council moved to dismiss the case on the grounds that it was barred by the U. S. Const. amend. XI. However, this argument is only available when the state is brought into federal court involuntarily. If a state voluntarily agrees to removal of a state action to federal court, the Court has held it may not then invoke a defense of sovereign immunity and thereby gain an unfair tactical advantage. *Lapides v. Board of Regents, 535 U.S. 613 (2002).* Also see in *Ala.* v. *Garrett,* 531 U. S. 356 (2001). The court in *Garrett* concluded that the U. S. Const. amend. XI. bars private suits seeking money damages for state violations of Title I of the ADA. The court left open, however, the question whether the U. S. Const. amend. XI. permits suits for money damages under Title II. *Id.,* at 360, n. 1. Following the *Garrett* decision, the Court of Appeals, sitting (en banc, heard argument in a Title II suit) brought by a hearing-impaired litigant who sought money damages for the State's failure to accommodate his disability in a child custody proceeding. See, *Popovich* v. *Cuyahoga County Court*, 276 F. 3d 808 (CA6 2002). A divided court permitted the suit to proceed despite the State's assertion of U. S. Const. amend. XI. immunity. The majority interpreted *Garrett* to bar private ADA suits against States based on equal protection principles, but not those that rely on "due process" principles. 276 F. 3d, at 811–816. The minority concluded that Congress had not validly abrogated the States' U. S. Const. amend. XI. immunity for any Title II claims, *id.,* at 821,

83. The courts concurring opinion concluded that "Title II validly abrogated state sovereign immunity" with respect to both **equal protection and due process claims,** *id.,* at 818. The SHERIFF / RUEHLMANN procedure is Ripe for a due process claim . The SHERIFF / RUEHLMANN procedure violates **both equal**

**protection and due process** see  §12132 *UNITED STATES v. TWEEL 550 F.2d 297 (5th Cir. 1977)* is a well-established RULE that a consent search is unreasonable under the U. S. Const. amend. IV. if the consent was induced by the deceit, trickery or misrepresentation of the Internal Revenue agent. Also see ***United States v. Rothstein*, 530 F.2d 1275 (5th Cir. 1976); *United States v. Dawson*, 486 F.2d 1326 (5th Cir. 1973); *United States v. Bland*, 458 F.2d 1 (5th Cir. 1972).**

**83. Now we come to** The SHERIFF / RUEHLMANN procedure and how it relates to Clearly established law.

84. As stated earlier the local "RULES of court are arbitrary, capricious as trying to comply in good faith one minute and 30 seconds after passing security Speers: Hrnyak , Brogan and Dryer have a new RULE. I will try to summarize the violation as best I can.

84.  The first step of the *City of Boerne* v. *Flores,* 521 U. S. 507, 519. inquiry requires us to identify the constitutional right or rights that Congress sought to enforce when it enacted Title II. *Garrett,* 531 U. S., at 365. In *Garrett* we identified Title I's purpose as enforcement of the U. S. Const. amend. XIV.  command that "all persons similarly situated should be treated alike." *Cleburne* v. *Cleburne Living Center, Inc.,* 473 U. S. 432, 439 (1985). As we observed, classifications based on disability violate that constitutional command if they lack a rational relationship to a legitimate governmental purpose. *Garrett,* 531 U. S., at 366 (citing *Cleburne,* 473 U. S., at 446). Title II, like Title I, seeks to enforce this prohibition on irrational disability discrimination. But it also seeks to enforce a variety of other basic constitutional guarantees, infringements of which are subject to more searching judicial review. See, *e.g., Dunn* v. *Blumstein,* 405 U. S. 330, 336–337 (1972);   *Shapiro* v. *Thompson,* 394 U. S. 618, 634) (1969); Skinner v. Oklahoma ex rel. Williamson, 316 U. S. 535, 541 (1942. These rights include

- 24 -

some, like the right of access to the courts at issue in this case, that are protected by the Due Process Clause of the U. S. Const. amend. XIV. The Due Process Clause and the Confrontation Clause of the U. S. Const. amend. VI, as applied to the States via the U. S. Const. amend. XIV, both guarantee to a criminal defendant and respondent **Mr. Gipson.**

**85.** It is not difficult to perceive the harm that Title II is designed to address. Congress enacted Title II against a backdrop of pervasive unequal treatment in the administration of state services and programs, including systematic deprivations of fundamental rights. For example, as of 1979, most States categorically disqualified 'idiots' from voting, without regard to individual capacity.

**86.** This pattern of disability discrimination persisted despite several federal and state legislative efforts to address it. In the deliberations that led up to the enactment of the ADA, Congress identified important shortcomings in existing laws that rendered them "inadequate to address the pervasive problems of discrimination that people with disabilities are facing.

87. The taking and continuous harassment by Lara Hayslip was a violation Clearly established law. See Searches Incident to Arrest A police officer's power to search a person incident to a lawful arrest is heightened such that it is often reasonable for a police officer to conduct a search incident to arrest without a warrant. See *Riley v. California, 573 U.S. 373, 381–85 (2014).* Whether a warrantless search incident to an arrest is reasonable depends on "the degree to which it intrudes upon an individual's privacy and the degree to which it is needed for the promotion of legitimate governmental interests." See id. (quoting *Wyoming v. Houghton, 526 U.S. 295, 300 (1999)).* The balance of these interests led the Supreme Court in *United States v. Robinson, 414 U.S. 218 (1973),* to create a "categorical RULE" allowing officers to search physical objects found on an arrestee's person. See *Riley, 573 U.S. at 383–86* (describing Robinson's holding). In *Riley v. California,*

*573 U.S. 373, 386 (2014),* however, the Supreme Court declined to extend Robinson's RULE to searches of data on cell phones, holding that officers must generally secure a warrant before conducting such searches. [45:26] JUDGE RUEHLMAN: Oh but we can't open it. well Go get it then. Well, maybe we can resolve this problem and play the video. Play it. Can you open your phone? Play the video. JUDGE RUEHLMAN admit to an attempt open Mr. Gipson's phone without a warrant.

## VII. CONCLUSION AND PRAYER FOR RELIEF

98  In conclusion, Mr. Gipson  respectfully submits that the evidence submitted on the thumb drive on the first day was overlooked by the district court. This evidence presented  during this appeal underscores significant errors in the lower court's judgment. The misinterpretation of crucial facts and the misapplication of relevant legal precedents have led to an unjust outcome. Mr. Gipson  urge this honorable court to carefully consider the merits of the  argument and recognize the need for a fair and impartial reassessment of the case. A remand to the district court is not only appropriate but essential for justice to prevail. We believe that a more thorough examination of the facts and a proper application of the law will reveal the errors that have occurred and ultimately lead to a more just resolution. Thank you for your consideration."  "I declare (certify and state) under penalty  of perjury under the laws of the United States of America that the foregoing is true and correct."

DATED: January 29, 2024                                  */s/ David Gipson*
                                                                          DAVID GIPSON

## V.III CERTIFICATE OF SERVICE

The undersigned counsel states that this brief was filed electronically; that no paper copies were filed with the clerk of court. I certify that on this 29th day of January 2023, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users, or, if they are not, by forwarding a true and correct copy by email and/or U.S. mail, to their address of record:

David Gipson
10 Lakefield Drive
Milford, OH 45150                                    /s/ David Gipson
Pro Se Plaintiff

                                                     DAVID GIPSON